# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Cushing v. Greyhound Lines, Inc.*, 2013 IL App (1st) 103197

---

| | |
|---|---|
| Appellate Court Caption | F. JOHN CUSHING, Administrator *de bonis non* of the Estate of Claudia Zvunca, Deceased, Plaintiff-Appellant, v. GREYHOUND LINES, INC.; MOTOR COACH INDUSTRIES, INC.; and MOTOR COACH INDUSTRIES INTERNATIONAL, INC., Defendants-Appellees (Cristina Zvunca, Plaintiff). |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-3197 |
| Filed | May 16, 2013 |
| Rehearing denied | June 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal in an action arising from the fatal injuries suffered by plaintiff's decedent when she was struck and killed by a bus on which she had been traveling, the appellate court vacated the trial court's orders dismissing the case with prejudice because of a settlement, distributing fees and expenses, granting defendant's motion to bar decedent's daughter from testifying as to her pending claims, dismissing her claims for negligent infliction of emotional distress, finding defendant's settlement offers were fair and reasonable and made in good faith and were in the child's best interest, amending the caption of the case, removing several attorneys, and granting a motion for substitution of judge. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 07-L-3391, 09-L-10417; the Hon. William H. Haddad and the Hon. Daniel M. Locallo, Judges, presiding. |

| | |
|---|---|
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | Scott G. Golinkin, of Law Offices of Scott G. Golinkin, of Chicago, for appellant. |
| | Edward M. Kay, Paul Bozych, and Paul V. Esposito, all of Clausen Miller, P.C., of Chicago, for appellee Greyhound Lines, Inc. |
| | John W. Patton, Jr., and Michael G. Vranicar, both of Patton & Ryan LLC, of Chicago, for appellees Motor Coach Industries, Inc., and Motor Coach Industries International, Inc. |
| | David J. Gubbins, of Chicago, guardian *ad litem* for Cristina Zvunca. Thomas A. Clancy and Jeanine L. Stevens, both of Clancy & Stevens, of Chicago, for Clancy & Stevens and Jeanine Stevens. |
| | Michael W. Rathsack, of Chicago, for guardian *ad litem* Marina E. Ammendola. |
| | David A. Novoselsky, of Novoselsky Law Offices, of Chicago, for appellee David A. Novoselsky. |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Justices McBride and Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, F. John Cushing, administrator *de bonis non* of the estate of Claudia Zvunca, deceased (Cushing), filed this appeal seeking to reverse the circuit's order that dismissed this case with prejudice as the result of a settlement, as well as numerous other orders entered by the trial court including the September 8, 2009 order discharging his retained counsel,[1] the June 10, 2010 order approving a settlement with defendant, Greyhound Lines, Inc. (Greyhound), and the September 1, 2010 order approving a settlement with defendants Motor

---

[1]Cushing subsequently retained attorney Scott Golinkin, who represents Cushing in this appeal.

-2-

Coach Industries, Inc., and Motor Coach Industries International, Inc. (collectively, Motor Coach). For the reasons that follow, we vacate and remand with directions.

¶ 2                                    BACKGROUND
¶ 3                               Factual Background
¶ 4      On January 15, 2002, Claudia Zvunca (decedent), a 32-year-old Romanian immigrant, was struck, run over, and killed by a Greyhound bus she was taking from Las Vegas, Nevada, to Chicago, Illinois, during a stop at the Greyhound bus station in Grand Junction, Colorado. Her minor daughter, Cristina Zvunca (Cristina), who was seven years old at the time, witnessed the accident. Besides Cristina, decedent's only other heir was her husband, Tiberiu Klein, whom she had married in the fall of 2000. Klein, Claudia, and Cristina had immigrated to the United States from Romania on a United States visa lottery program in March 2001. Klein is neither Cristina's biological father nor her adoptive father. The decedent was also survived by her parents (Cristina's grandparents), who later adopted Cristina in Romania.

¶ 5                              Procedural Background
¶ 6      As we noted in an earlier opinion in this case (*Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768) (*Cushing I*), from the tragic, but relatively straightforward, facts regarding Claudia Zvunca's death, arose at least 13 lawsuits in various state and federal courts. Among these were legal malpractice suits and two wrongful death actions, proceeding simultaneously in Illinois and Colorado. This court has also had before it over 25 appeals related to this case, many of which were filed by Klein in his continuing attempt to intervene in this matter as the party entitled to represent "Cristina's" interests. In 2005, another panel of this court affirmed the trial court's decision to deny Greyhound's motion to stay the Illinois action. *Marshall v. Motor Coach Industries International, Inc.*, No. 1-05-0701 (2005) (unpublished order under Supreme Court Rule 23). In 2006, the same panel affirmed the trial court's denial of Greyhound and Motor Coach's (collectively, defendants') *forum non conveniens* motion. *Cushing v. Greyhound Lines, Inc.*, No. 1-05-1463 (2006) (unpublished order under Supreme Court Rule 23). Most recently, in *Cushing I*, this court held that the trial court had erred in appointing a "special" administrator where Cushing had already been appointed as the administrator.

¶ 7      As one of the trial judges involved in this case aptly noted, although this case was originally filed in 2002, it "has since been mired in delays and impeded in its resolution." The trial court made that observation more than *three years ago*. More recently, a federal court commented on the "morass" that had developed in this matter and pointedly observed that the motions for sanctions before that court had resulted from a "convoluted attorney-created procedural labyrinth." *MB Financial, N.A. v. Stevens*, No. 11 C 798, slip op. at 1 (N.D. Ill. July 5, 2011) (unpublished memorandum opinion and order). We echo that sentiment. There, the federal court awarded sanctions against attorney David Novoselsky in favor of Cristina Zvunca and attorney Jeanine Stevens. The court explained that "[c]ompletely untangling" that labyrinth was unnecessary for purposes of its ruling on the

motions for sanctions. *Id.* The same was true here for the plethora of motions brought by the various parties, putative parties, and their attorneys that we have already ruled upon. The disposition of the instant appeal, however, does require significant additional untangling.

¶ 8   In *Cushing I*, we explained that the lengthy and somewhat confusing procedural history is due in part to the simultaneous existence of the two wrongful death actions based on the same death. Yet that is just one part of the "convoluted attorney-created procedural labyrinth" that we address below. We include much of the procedural background from *Cushing I*, which we have augmented, revised and updated, by reviewing the 105 volumes of record filed in this appeal and the law of the case (including our records from the three prior appeals decided by this court). We have also taken judicial notice of court pleadings and court orders to facilitate an understanding of the multiple issues now raised in *this* appeal.

¶ 9   In this opinion we include a quite lengthy procedural background. In addition to containing the history necessary for an understanding of the legal issues raised in this appeal, we have included additional history for other purposes. First, this procedural background will provide this court with a reference for related appeals now filed in this matter and not yet ready for disposition, as well as other matters that should arise in the future. More importantly, we believe that it provides a contextual framework for the trial court upon remand, as well as the Attorney Registration and Disciplinary Commission (ARDC). We are mindful that the length of this opinion creates burdens for the reader and for that we apologize.

¶ 10   *First Complaint Filed in Cook County (No. 02 L 5584) Is*
*Removed to Federal Court (Colorado Action)*

¶ 11   On May 3, 2002, in Cook County, Klein, "individually and as Executor of the Estate of Claudia Zvunca," filed a wrongful death and survival action against Greyhound Lines, Inc. (Greyhound), and its driver, Wesley Jay Tatum (No. 02 L 5584). Motor Coach was not named as a defendant at this point. Klein alleged in the complaint that he was Cristina's guardian and sought wrongful death damages for *both* himself and Cristina (paragraph 14 of the complaint alleged that both he and Cristina had "lost the companionship, love, [and] affection of their respective wife and mother"). Claudia had died intestate, however, and Klein had not been appointed representative of Claudia's estate. Neither had Klein been appointed special administrator. This deficiency was never addressed by an Illinois court and it was never challenged by Greyhound. Instead, on May 31, 2002, Greyhound filed a notice of removal of that action to federal court based on diversity of citizenship. Greyhound then filed a *forum non conveniens* motion in federal court for the Northern District of Illinois, which was granted, and the action was transferred to the District of Colorado. On November 12, 2002, Greyhound filed its answer to Klein's complaint. On December 6, 2002, Klein filed a motion for voluntary dismissal of the action without prejudice, which Greyhound opposed. The court denied Klein's motion because Greyhound had already answered the complaint and there was no stipulation to dismiss the case. The deadline for amending pleadings and adding parties was set for January 6, 2003.

¶ 12     On or about February 19, 2003, Klein retained the law firm of Cogan, McNabola & Dolan, LLC (the Cogan firm), as substitute counsel. *Cogan & McNabola, P.C. v. Klein*, No. 1-09-0848 (2010) (unpublished order under Supreme Court Rule 23). The Cogan firm represented Klein in the Colorado action.

¶ 13     Due in part to Klein's change in counsel, an earlier scheduling order was superseded by a supplemental scheduling order, which left the deadline for amending pleadings and adding parties unchanged.

### *First Probate Case (No. 03 P 8718)*

¶ 15     In November 2003, Klein filed a petition in the probate division of the circuit court of Cook County to appoint Greg Marshall as the independent administrator of the decedent's estate. Marshall was a paralegal in the Cogan firm. The probate division granted Klein's petition.

### *Greyhound Opposes Klein's Attempt to Add Motor Coach as a Defendant in Colorado Case*

¶ 17     On January 13, 2004, two days before the expiration of the statute of limitations, Klein filed a motion for leave to file a first amended complaint to add bus designer Motor Coach as an additional defendant in the Colorado case and to assert a product liability claim against it. Greyhound opposed the motion.

### *Second Complaint Filed in Cook County (No. 04 L 497)*

¶ 19     On January 15, 2004, the Cogan firm filed a wrongful death and survival complaint in Cook County against Motor Coach (No. 04 L 497). The plaintiff again was Greg Marshall, as administrator of the estate of Claudia Zvunca, deceased.

### *Colorado Court Denies Klein's Motion to Add Motor Coach as a Defendant*

¶ 21     On March 24, 2004, *nunc pro tunc* March 23, 2004, the Colorado court denied, as untimely, Klein's motion to amend his complaint to add Motor Coach.

### *Amended Complaint Filed in Cook County Case (No. 04 L 497)*

¶ 23     On April 6, 2004, the circuit court of Cook County granted leave to the Cogan firm to amend Marshall's complaint to add Greyhound and Tatum as defendants.

### *Klein Discharges the Cogan Firm and Retains Clancy & Stevens*

¶ 25     On April 27, 2004, Klein signed a legal services agreement with the law firm of Clancy & Stevens (the Clancy firm). The Cogan firm withdrew after being discharged by Klein.

¶ 26                    *Greyhound and Tatum Move to Dismiss Complaint*
                         *Filed in Cook County (No. 04 L 497)*

¶ 27        On May 13, 2004, Greyhound and Tatum filed a motion to dismiss in case No. 04 L 497.

¶ 28              *Second Complaint Filed in Cook County (No. 04 L 497)*
                            *Is Voluntarily Dismissed*

¶ 29        In case No. 04 L 497, the Clancy firm substituted as counsel for Marshall. (The Clancy firm also later replaced the Cogan firm as Klein's counsel in the Colorado action.) In May 2004, case No. 04 L 497 was voluntarily dismissed.

¶ 30                *Third Complaint Filed in Cook County (No. 04 L 10431,*
                         *Later Renumbered as No. 07 L 3391)*

¶ 31        On September 14, 2004, the Clancy firm filed the underlying action in the circuit court on behalf of Greg Marshall, as independent administrator of the estate of Claudia Zvunca, deceased, and Cristina Zvunca, a minor, by Paul Brent, as next friend, against Motor Coach, Greyhound, and Tatum (No. 04 L 10431). Count I alleged strict liability/wrongful death against Motor Coach and sought recovery on behalf of both Klein and Cristina. Count II was a strict liability/survival count against Motor Coach. Count III alleged negligence/wrongful death against Motor Coach and sought recovery on behalf of both Klein and Cristina. Count IV was a negligence/survival count against Motor Coach. Count V alleged common carrier liability/wrongful death against Greyhound, and Tatum and sought recovery for Cristina, but not for Klein. Count VI was a common carrier liability/survival count against Greyhound and Tatum. Count VII, brought by Paul Brent, on behalf of Cristina, alleged negligent infliction of emotional distress against Motor Coach. Count VIII, also brought by Brent, on behalf of Cristina, alleged negligent infliction of emotional distress against Greyhound and Tatum. The case was assigned to Judge Susan Zwick.

¶ 32                    *Colorado Court Denies Klein's Motion to*
                       *Transfer Colorado Action Back to Illinois*

¶ 33        On October 8, 2004, the Clancy firm, on behalf of Klein, moved for reconsideration of the 2002 order transferring the case to Colorado, and requested that the case be transferred back to the Northern District of Illinois. Klein noted that the Illinois case had been filed in which Motor Coach, an Illinois corporation, was an additional defendant. Klein contended that, by transferring the Colorado action back to Illinois, all claims could ultimately be consolidated in a single forum before a single judge and tried to a single jury. In the alternative, Klein sought a determination that Cristina's claim for damages was not at issue in the Colorado action. Greyhound opposed Klein's motion.

¶ 34        On November 15, 2004, the Colorado court denied Klein's motions, holding that consolidation "would not be realized because there is no diversity jurisdiction for the claims in the state court action so there can be no consolidation with [the Colorado federal court]

case if it is returned to the Northern District of Illinois." The court further stated that retransfer would be prejudicial to the defendants there, as the case had been pending for more than two years and was ready for trial. The court also ruled that any claim for damages sustained by Cristina *on her own behalf* was not an issue in the litigation in which she was not a party. (Unlike the Illinois action, the Colorado action contained no counts regarding Cristina's emotional distress.) The court *specifically refused* to "issue an advisory ruling on the effects of a recovery in this case as to entitlement to wrongful death proceeds."

¶ 35      *Greyhound Seeks Dismissal or Stay of Illinois Action as Duplicative of*
*Colorado Action and Files Appeal (No. 1-05-0701)*

¶ 36    In November and December 2004, Greyhound filed several motions in the Illinois action including: a motion to dismiss the complaint as duplicative of the Colorado action; a motion to dismiss the wrongful death and survival claims as time barred; a motion to sever the claims against Greyhound so that they could be transferred to Colorado; and a motion to stay, as an alternative to dismissing the action. The circuit court dismissed the survival count as time barred but denied all of the other motions. On March 18, 2005, Greyhound filed an interlocutory appeal from the denial of its motion to stay the proceedings, arguing that the trial court should have stayed the Illinois action pursuant to section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 2004)) because it was duplicative of the Colorado action.

¶ 37      *Colorado Court Decides Illinois Action Should Take Precedence*

¶ 38    Meanwhile, Greyhound actively defended the Colorado action. On April 5, 2005, Greyhound filed a motion to set pretrial conference and jury trial. On April 15, 2005, the federal court in Colorado denied Greyhound's motion and stated:

> "[I]t appears that the action pending in Cook County, Illinois, in which Motorcoach Industries International, Inc., is an additional defendant on a product liability claim is going forward in the trial court and that the future of that litigation may be affected by appeals that are pending, including an appeal by Greyhound of the denial of its motion to stay the Cook County action and it appearing to this court that because Motorcoach Industries International, Inc., could not be joined in this civil action because it would destroy diversity jurisdiction which was the basis upon which Greyhound removed this case and caused it to be transferred from Cook County, Illinois, *the case pending in Cook County, Illinois, should take precedence* and it is therefore ordered that the second motion to set pretrial conference and jury trial is denied." (Emphasis added.)

¶ 39      *Ammendola and Cushing Appointed in Underlying Action*

¶ 40    While appeal No. 1-05-0701 was pending, the Clancy firm, on behalf of "plaintiff, Cristina Zvunca, a minor, by next friend Paul Brandt" (also referred to as Paul Brent) filed an emergency motion to appoint Marina E. Ammendola as guardian *ad litem* for Cristina. The motion stated: "It appears that the assistance of a Guardian *ad Litem* is necessary for the

prosecution of Cristina's case and that a Guardian *ad Litem* would be in a better position to assist in the prosecution of Cristina's case than Mr. Brandt, as her next friend." On May 12, 2005, the court appointed Marina Ammendola as Cristina's guardian *ad litem* (GAL). On May 13, 2005, pursuant to Klein's verified petition, the probate division appointed Cushing as the independent administrator *de bonis non* of Claudia's estate, to replace Marshall, who had resigned on April 27, 2005. On May 19, 2005, the Clancy firm filed an amended complaint in case No. 04 L 10431 containing the same counts as the original complaint but substituting Cushing for Marshall, and GAL Ammendola for Paul Brent. The court later granted a motion to amend the caption accordingly. On August 26, 2005, Cushing signed a legal services agreement with the Clancy firm. On September 27, 2005, pursuant to Klein's motion, Cushing's status was changed from an independent administrator to a supervised administrator.

¶ 41                        *Cristina Resides With Stevens*

¶ 42        During the school year 2005-06, Cristina resided with Stevens. As further detailed below, Novoselsky would later file actions in both state court (No. 09 L 6397) and federal court (No. 08 C 4507) against Stevens, among others, related to this time period. We also note that the record contains an affidavit of Cristina's grandmother, and mother by adoption, Maria Zvunca, dated April 17, 2010, submitted in the federal court case, stating that she and her husband gave permission for Cristina to reside with Stevens.

¶ 43              *This Court Affirms Denial of Greyhound's Motion*
                  *to Stay Illinois Action (Appeal No. 1-05-0701)*

¶ 44        In appeal No. 1-05-0701, the Clancy firm, on behalf of plaintiffs, argued that the trial court correctly denied Greyhound's motion to stay the Illinois action. Plaintiffs also argued, *inter alia*, that the Illinois action and the Colorado action were based on different underlying issues and that Klein and Cristina were not the same party because they were not in privity and their interests were not sufficiently similar. They noted that Cristina's damages, on her own behalf, (*i.e.*, her emotional distress claims) were not at issue in the Colorado action. They asserted "Klein's 2002 complaint, which was originally filed in the circuit court of Cook County, was improperly filed under Illinois law because the action should have been filed by a court-appointed administrator of Claudia's Estate and only after notice was given to all interested parties, including Cristina." The Clancy firm asserted that Cushing did not seek damages on behalf of Klein against Greyhound in the Illinois action. The Clancy firm argued that, even if the court should determine that the Illinois action and the Colorado action had been brought by the "same party for the same cause," the discretionary factors, including comity, weighed in favor of denying the stay. In support of this latter argument, the Clancy firm referred to the April 15, 2005 court order in which the federal court in Colorado ruled that the Illinois action took precedence. The Clancy firm noted that resolution of the Colorado action would not result in complete relief because Motor Coach could not be joined as a defendant, and it would deprive Cristina recovery for her own injuries.

¶ 45        Greyhound argued that plaintiffs were "piggy-backing their claims against Greyhound

onto their claims against Motor Coach in an exploitative attempt to negate Greyhound's proper transfer of Klein's case to Colorado."

¶ 46    On September 30, 2005, another panel of this court entered a summary order in appeal No. 1-05-0701 and affirmed the trial court's decision to deny Greyhound's motion to stay the Illinois action. The panel concluded that Greyhound did not "establish the threshold requirement that the [Colorado] action involve[d] the same parties." As the court stated:

> "[W]e cannot find the sort of privity between the parties that would imply the substantial similarity necessary to justify a stay under section [2-]619(a)(3). Following the decedent's demise, Klein and [Cristina] are legally strangers. Klein is not [Cristina's] natural father, and he has not been appointed to act as her guardian. Although they undoubtably share an interest in obtaining as large a judgment as possible from defendant as the result of decedent's death, their interest may well diverge in other areas. For example, under Illinois law, [Cristina] may argue that she is entitled to a larger share of any wrongful death verdict because she has a greater 'percentage of dependency' than Klein. See 740 ILCS 180/2 (West 2004). At the very least, [Cristina] and Klein may disagree about whether Illinois or Colorado law should govern the proceeds of any wrongful death claim. Moreover, because [Cristina] claims damages individually as the result of negligent infliction of emotion [*sic*] distress, she and Klein may disagree about how a potential settlement with defendant should be attributed [*sic*] between the wrongful death and negligent infliction claims. We cannot conclude that two parties with potentially divergent interests are substantially the same party within the meaning of section [2-]619(a)(3), even if, as defendant argues, the parties continue to exhibit a close personal relationship." *Marshall v. Motor Coach Industries International, Inc.*, No. 1-05-0701 (2005) (unpublished order under Supreme Court Rule 23).

¶ 47    *Greyhound and Motor Coach Appeal Denial of Their*
        *Forum Non Conveniens Motion (Appeal No. 1-05-1463)*

¶ 48    While appeal No. 1-05-0701 was still pending, Greyhound, along with Motor Coach, pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. July 1, 2004), petitioned this court for leave to appeal the January 18, 2009 denial of its *forum non conveniens* motion (appeal No. 1-05-1463). On August 29, 2005, prior to this court's ruling on the petition for leave to appeal, the circuit court placed the case on an accelerated docket and set the case for trial certification by December 2, 2005. On September 16, 2005, this court granted defendants' petition for leave to appeal pursuant to Supreme Court Rule 306(a)(2). On September 29, 2006, the same panel that decided appeal No. 1-05-0701 entered a summary order and affirmed the trial court's denial of the *forum non conveniens* motion. *Cushing v. Greyhound Lines, Inc.*, No. 1-05-1463 (2006) (unpublished order under Supreme Court Rule 23).

¶ 49    *Klein Files Legal Malpractice Suit (No. 07 L 2063)*

¶ 50    On February 23, 2007, Klein, *pro se*, filed a legal malpractice suit against various defendants including Cushing, Marshall, Stevens, the Clancy firm, the Cogan firm, Greyhound's counsel, and the law firm that filed his 2002 wrongful death action. The case

was later voluntarily dismissed and Klein's motion to reinstate the case was denied in April 2009.

¶ 51            *Klein Attempts to Remove Cushing and Intervene in the Illinois Action*

¶ 52    During 2007 and 2008, Klein filed a number of petitions to remove Cushing and to intervene in the Illinois action, all of which were denied. Novoselsky assisted Klein in his efforts, as we discuss below.

¶ 53            *Greyhound Seeks to Depose and Remove Stevens*

¶ 54    After Greyhound's unsuccessful interlocutory appeals in the Illinois action, a mediation took place on June 28, 2007, which did not settle the case. On July 10, 2007, Greyhound filed a motion for sanctions for mediating in bad faith (which was later denied), and a motion to stay discovery for a determination of whether Stevens could continue as counsel. Noting that Cristina had lived with Stevens for nine months (between September 2005 and June 2006), Greyhound contended that Stevens would be a witness to Cristina's emotional distress and had a conflict of interest. Greyhound also sought to depose Stevens.

¶ 55            *Greyhound Moves to Compel Cristina's Deposition*

¶ 56    On July 10, 2007, in addition to the motions noted above, Greyhound also filed a motion to compel Cristina's deposition, which it claimed it had been seeking since 2005.

¶ 57            *July 11, 2007 Hearing*

¶ 58    During a hearing on July 11, 2007, the court addressed Greyhound's motion, joined by Motor Coach, to depose Stevens. Although Judge Zwick stated that she took it as a motion to disqualify, Greyhound attorney Brian Schroeder disagreed and stated "[w]e're not there yet." Schroeder argued that Stevens was a witness because Cristina had lived with her for nine months. He stated that Stevens's observations of Cristina were "directly relevant to [Cristina's] damages claim." Schroeder also moved to depose GAL Ammendola, which Motor Coach joined, because he wanted to know "when she's spoken to [Cristina] and about what." Stevens stated that she thought GAL Ammendola was the appropriate deponent, and not her, because GAL Ammendola could "address the issue as to why [Cristina] lived in her home." Judge Zwick stated that "if Ms. Stevens is a caretaker, then she's a material witness and then her qualifications to continue as an attorney may very well be called into question." Schroeder stated that he could not file a motion to disqualify Stevens until he took her deposition. Judge Zwick decided that the motion was premature and it was entered and continued.

¶ 59    The court then addressed the issue of Cristina's deposition. Stevens objected to Cristina being deposed based upon a determination made by Cristina's treating medical professional (the transcript references physician, psychologist, and social worker) that discussing the event would revest it with Cristina and cause her permanent harm. The court stated that it could not make a determination until it heard the medical evidence which might involve

taking the medical professional's deposition or allowing defendants to have an independent medical examination.

¶ 60 GAL Ammendola recommended having only "one examination" and "not the Plaintiff's examination and the Defendant's examination, but a Court independent examination separate and apart to really look at what we're going to do to this child." She further noted that there were 40 witnesses and other people who were present, and suggested that the issue of Cristina's deposition did not need immediate resolution. GAL Ammendola also stated that, at that point, she would "strongly oppose" having Cristina examined by somebody that either the plaintiff or the defendant wanted.

¶ 61 *Hearing of July 17, 2007 Regarding Cristina's*
*Deposition and GAL Ammendola's Role*

¶ 62 On July 17, 2007, the court again addressed the issue of whether it was in Cristina's best interests to give a deposition. Citing *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563 (1995), the court noted that it considered GAL Ammendola as an attorney for the child. After noting that she had not requested any report from the GAL, and further noting that she was the motion judge only, Judge Zwick stated:

> "So the GAL's function in this court has more distance than it might in [an]other circumstance. This isn't a situation where a settlement offer is on the table and I brought in the GAL for a recommendation. This is a situation where the representation was not solidified because [of] the nature of the litigation and I brought in the GAL and I appointed her to look after the minor's interest. In that point we have an advocacy relationship."

¶ 63 Regarding the issue of traumatization, the court gave the date of September 7, 2007 for deciding how plaintiffs wanted to proceed and set a status hearing for September 12, 2007.

¶ 64 *Attempted Settlement of Colorado Action in July 2007*

¶ 65 The record shows that, in about July 2007, Klein and Greyhound attempted to obtain a settlement in the Colorado action which would be premised upon the Illinois action being dismissed. Klein requested that James Avery, the attorney representing Klein in the Colorado action, confirm this to Maria Zvunca and confirm that they had discussed a potential offer of $8 to $9 million conditioned upon the Colorado action being amended to add Motor Coach and Cristina's grandmother appearing before the Colorado court and agreeing to "close all claims" in Illinois.

¶ 66 The record contains a copy of a letter dated July 12, 2007, to Klein and Maria Zvunca from Avery. Avery stated that the purpose of the letter was to relate a conversation he had with Greyhound's attorney, Schroeder, and to discuss settlement strategy. Avery stated that Schroeder said Greyhound was willing to discuss settlement of the case with Avery and was willing to offer more than $250,000, but would not offer more so long as Stevens was on the case. According to Avery, Schroeder stated that "it was because of her offensive behavior, and that she [had] been unprofessional in her approach to the settlement discussions and

[had] offended all of the defense lawyers and legal representatives (decision makers) for Greyhound and [Motor Coach]." Avery stated that he had told Schroeder that he had been recently retained by Maria Zvunca, and "at her request," was "taking steps to remove Stevens, Ammendola and Cushing from the case." The settlement "strategy" involved settling the case in Colorado, with Motor Coach added by agreement of the parties, and dismissing the case in Illinois. However, Avery asserted "[w]e did not discuss a settlement figure in this conversation." Avery additionally stated that an incidental benefit would be that a federal judge would likely decide all issues related to attorney fees. Avery also stated "I suspect that the judges in Illinois will want to see their 'bar members' get handsome recoveries whether they deserve it or not."

¶ 67                    *GAL Ammendola Seeks Opinion From Dr. Bennett Leventhal*

¶ 68        On August 2, 2007, GAL Ammendola wrote a letter to Dr. Bennett Leventhal, a pediatric psychiatrist, and requested that he make a determination as to whether Cristina could give a deposition. She provided him with copies of Cristina's prior treatment records and the police report of the accident for his review. Dr. Leventhal concluded, in a letter dated September 6, 2007, that he did not think it was appropriate for Cristina to give a deposition.

¶ 69                    *GAL Ammendola Seeks Klein's Cooperation in*
                       *Obtaining Cristina's Medical Evaluation*

¶ 70        On September 11, 2007, and apparently again on January 31, 2008, the trial court requested a current evaluation before ruling on whether it was in Cristina's best interests to give a deposition. On February 20, 2008, GAL Ammendola faxed a letter to Klein, who was Cristina's temporary guardian at the time, urging his cooperation. GAL Ammendola offered Klein three options: (1) agree to take Cristina to the appointment scheduled with the pediatric psychiatrist; (2) agree to allow GAL Ammendola to take Cristina to the appointment; or (3) refuse to take her and refuse to cooperate with the evaluation.

¶ 71                    *Klein Seeks Guardianship of Cristina in Second Probate Case*
                       *(No. 07 P 7929)*

¶ 72        Meanwhile, on November 8, 2007, Klein, *pro se*, filed a petition in the probate division for guardianship of Cristina.

¶ 73                    *Klein's Attorney in Colorado Action Attempts to*
                       *Intervene in Underlying Action*

¶ 74        On January 24, 2008, Judge Zwick denied Avery's petition for admission *pro hac vice* and motion on behalf of Klein to intervene and to stay the proceedings.

¶ 75                    *Klein Retains Attorney David Novoselsky*

¶ 76        On February 21, 2008, the day after GAL Ammendola's written request to Klein to

cooperate, David Novoselsky faxed a letter to GAL Ammendola informing her that he had been "retained by Klein to represent his interests in this matter." The letter requested that GAL Ammendola telephone Novoselsky. On February 28, 2008, and again on March 6, 2008, GAL Ammendola sent letters to Novoselsky in which she noted that he had not yet responded to her telephone calls or letters, and she requested that he please inform her of his client's decision regarding Cristina's evaluation.

¶ 77     On March 11, 2008, the trial court ordered that Cristina be produced for a medical examination by the pediatric psychiatrist. On March 12, 2008, pursuant to Illinois Supreme Court Rule 215 (eff. July 1, 2002), Greyhound moved for a medical examination by its own expert. On April 7, 2008, Novoselsky sent a letter to GAL Ammendola stating that he had met with Klein, Cristina and her adoptive parents and they agreed to the examination by the pediatric psychiatrist. Novoselsky further informed GAL Ammendola that he had been retained not only by Klein, but also by Cristina's grandparents and would be moving to remove Stevens because she had been quite hostile to Klein and the grandparents.

¶ 78            *Novoselsky Assists Klein in First Probate Case*
                *(No. 03 P 8718) and in Underlying Action*

¶ 79     After being retained by Klein, Novoselsky filed his appearance on March 27, 2008 in the first probate case involving Claudia's estate (No. 03 P 8718), "on behalf of Mr. Tiberiu Klein."

¶ 80     On April 14, 2008, one week after sending his letter to GAL Ammendola, Novoselsky filed a motion to intervene as a matter of right in the underlying action on behalf of "Tiberiu Klein, as Temporary Guardian of Christina [*sic*] Zvunca, a Minor, Maria Zvunca, the Mother by adoption of said Minor, and Vasile Zvunca, the Father by adoption of said Minor."

¶ 81     On April 23, 2008, GAL Ammendola again wrote to Novoselsky urging his clients' cooperation with the court order regarding the medical evaluation of Cristina. GAL Ammendola stated that Klein's and the Zvunca's "lack of cooperation and obstructive conduct is only detrimental to Cristina's interests. It is unquestionable that a current and present assessment of Cristina is in her best interests, and necessary for her case." Nonetheless, Novoselsky's clients continued to not cooperate.

¶ 82            *Novoselsky Seeks Substitution of Judge Zwick*

¶ 83     On May 6, 2008, Novoselsky filed, on behalf of Klein and the Zvuncas, two motions for substitution of judge directed at Judge Zwick: one as a matter of right and the other for cause.

¶ 84            *Dr. Bennett Leventhal's Deposition*

¶ 85     On May 8, 2008, at his deposition, Dr. Leventhal testified that there were two reasons he did not think it was appropriate for Cristina to give a deposition: (1) she had not been adequately engaged in a treatment program that would be able to support her through the process; and (2) based on the records he had read, Cristina was struggling and to have her reexperience these events through a deposition could have exacerbated her problems, made

-13-

things much worse, and made it difficult for her at a level that could basically have been a reinjury. Stevens asked Dr. Leventhal whether "[r]ecognizing that Cristina has not had any therapy since June of 2006 and assuming that this case goes to trial this summer without Cristina having any additional therapy," it would be his opinion to a reasonable degree of medical certainty that Cristina "could not testify at the trial about the events surrounding her mother's death." Dr. Leventhal opined: "[B]ased on the information that I have available, which is substantially more than what I had at the time [he wrote the September 6, 2007 letter concluding that he did not think it was appropriate for Cristina to give a deposition], I think that my opinion would stand the same for testimony [at trial] as it would have for deposition."

¶ 86     Dr. Leventhal further testified that, after his September 6, 2007 letter, GAL Ammendola again contacted him, asked him to review additional materials, and perform an evaluation of Cristina. He also stated that he scheduled Cristina for two evaluations but she was not brought to him.

¶ 87                    *GAL Ammendola Opposes Klein's Attempt to Be Appointed*
                    *Cristina's Plenary Guardian; Novoselsky Assists Klein*

¶ 88     After Klein retained Novoselsky to represent his interests in the underlying action, Novoselsky assisted Klein in his efforts to obtain guardianship of Cristina in the probate case that Klein had filed *pro se*. After GAL Ammendola filed a response opposing Klein's *pro se* petition for guardianship of Cristina, Novoselsky filed an amended petition on Klein's behalf.

¶ 89     On May 29, 2008, a hearing was held before Judge Kathleen McGury in the probate division on Klein's petition for appointment as plenary guardian. Novoselsky appeared on behalf of Klein. GAL Ammendola appeared and objected to Klein's appointment. Novoselsky contended that GAL Ammendola had no standing to object because she had been appointed by "the [j]udge presiding over the negligent infliction of emotional distress and wrongful death action [*i.e.*, the instant action] relating to Cristina's mother." Novoselsky further claimed, however, without reference to authority that "the GAL was appointed for a very limited purpose–to review the settlement offer on behalf of the minor." Novoselsky argued that, as a then-14-year-old, Cristina could nominate Klein as guardian of her person and estate, pursuant to section 11-5(c) of the Probate Act of 1975 (755 ILCS 5/11-5(c) (West 2008)). He additionally argued that the actions taken by Klein and his Colorado attorney were "completely irrelevant." He also noted that any money recovered in the wrongful death action would probably go to a financial guardian like Northern Trust and not to Klein. Novoselsky argued that "we keep playing games, wasting this child's money on a fight from a discharged lawyer and a guardian appointed by the discharged lawyer," a guardian "who styles herself as the plaintiff." He also contended that GAL Ammendola had threatened the minor and made her nervous.

¶ 90     GAL Ammendola responded that she was appointed by Judge Zwick to be the minor's guardian *ad litem* and attorney and had been named as a representative plaintiff in the lawsuit. She noted that she had been appointed in 2005 and Novoselsky had been in the case

-14-

for less than five months. Contrary to Novoselsky's contention that the Colorado action was irrelevant, GAL Ammendola argued that the issues pertaining to the out-of-state Colorado lawyer directly impacted the best interests of the minor. She also explained that she was the person who had hired Dr. Leventhal to advise her so that she could advise the court. She noted that there were issues beyond that of whether the minor could testify. Regarding the issue of the court talking to the minor, GAL Ammendola stated: "Nobody has questioned the minor, not the Court–because the Court knew enough about the case to ask for assistance from an expert before the Court embarked on questioning the minor, her asking me to question the minor about those issues that are sensitive to this minor. So it is not correct that we are only interested in whether or not she can testify, because there are other concomitant issues regarding this minor's injuries that the Court was interested in."

¶ 91    Judge McGury allowed GAL Ammendola time to respond and set a briefing schedule and hearing date.

¶ 92                    *Judge Zwick Denies Klein's Motion to Intervene*

¶ 93    On June 3, 2008, Judge Zwick denied Klein's motion to intervene and ruled that the motions for substitution of judge were moot. In her written order, Judge Zwick noted that the petition to intervene stated that Klein had been appointed as Cristina's temporary guardian even though the petition predicated Klein's interest in this litigation on his status as the decedent's husband and his claim that *his* interests would not be adequately represented by the attorneys representing the estate, with whom Klein had a conflict. The court concluded that the estate had been aggressively represented throughout the litigation. The court noted that, at the time the petition to intervene was filed, all discovery relating to liability had been concluded, including expert discovery. The court further noted that, with the exception of Cristina's testimony, the case was ready for trial. Also, the court concluded that the July 2007 negotiations to settle the Colorado action, described earlier, suggested that Klein's interests and Cristina's interests were in conflict, and that allowing Klein to intervene might prejudice the rights of the original parties, including Cristina.

¶ 94    As to the Zvuncas (Cristina's grandparents/adoptive parents), the court noted that "[a] Guardian *ad Litem* was appointed to protect the rights of the minor, Cristina, and the Guardian [*ad Litem*] has served in this capacity since May 2005." The court concluded that the Zvuncas were strangers to the lawsuit and had not contended that the guardian *ad litem* had not adequately represented the minor but instead complained only that she had taken steps that were against the wishes of the family.

¶ 95                         *Status Hearing of June 5, 2008*

¶ 96    On June 5, 2008, at a status hearing, Judge Zwick reiterated that she wanted an updated examination before ruling on Greyhound's motion to compel Cristina's deposition or Greyhound's Rule 215 motion. The court ordered GAL Ammendola "to attempt evaluation of Cristina by [the pediatric psychiatrist] on or before June 20, 2008."

¶ 97          *Conflict Arises Between Novoselsky and GAL Ammendola*

¶ 98          On June 10, 2008, Novoselsky sent GAL Ammendola a letter in which he stated, among many other things, that he represented Cristina and Klein, who was Cristina's "lawful guardian, albeit temporary." Novoselsky informed GAL Ammendola, the court-appointed guardian *ad litem*, that she could not speak to Cristina, and that he was preparing a motion for sanctions against her for doing so, which he planned to present to Judge McGury in the probate division. Novoselsky stated that "any effort by [GAL Ammendola] or anyone else to physically take control of this child and take her to anywhere–let alone to appear before a psychiatrist–would be kidnapping." He also stated that "[n]either [GAL Ammendola] or Judge Zwick can order her to be taken anywhere other than by requesting that her personal guardian do so." On June 11, 2008, GAL Ammendola filed an emergency guardian *ad litem* report to the court advising it that she was unable to communicate with the minor.

¶ 99          *Leonard Malkin Appointed Guardian Ad Litem*
              *in the Probate Case (No. 07 P 7929)*

¶ 100         Before ruling on Klein's petition to be appointed Cristina's plenary guardian, the probate court, on June 27, 2008, appointed Leonard Malkin as guardian *ad litem* for Cristina in the probate case. The reason for his appointment was twofold: (1) to determine whether a conflict existed between Cristina and Klein; and (2) to determine if Cristina felt she was influenced or overly influenced by Klein or her grandparents.

¶ 101         *Novoselsky's Continued Involvement in the Underlying Action*

¶ 102         On July 3, 2008, a hearing was held before Judge Thomas L. Hogan on Greyhound's motion for rule to show cause as to why Vasile and Maria Zvunca should not be held in contempt for failing to appear at their depositions pursuant to Greyhound's subpoenas. Previously, Novoselsky had filed a motion for substitution of Judge Zwick for cause. She had therefore transferred the case to the assignment judge for reassignment of the hearing on Greyhound's motion. It was assigned to Judge Hogan, who undertook to determine who represented whom. Judge Hogan told Novoselsky, "with all due respect, without an appearance on file, you don't have a dog in this hunt outside of as the counsel for the people whose depositions are being sought."

¶ 103         *Judge Zwick Grants Greyhound Leave to*
              *File Motion Barring Cristina's Testimony*

¶ 104         On July 11, 2008, the court denied Greyhound's Rule 215 motion but granted Greyhound leave to file a motion to bar Cristina from testifying at trial and to dismiss Cristina's negligent infliction of emotional distress claims.

¶ 105         *GAL Malkin Files Report Under Seal*

¶ 106         In a report filed under seal on July 17, 2008, GAL Malkin noted that he met with

Cristina, Klein, Maria and Vasile Zvunca in GAL Malkin's office. No one else was present when he interviewed Cristina and then Klein. He interviewed Maria and Vasile together with a Romanian interpreter who had been provided by Novoselsky. He concluded, based on these interviews, that there was no conflict between Cristina and Klein and no conflict with respect to the proceeds of any personal injury action that may be forthcoming. He also stated he did not find any undue influence over Cristina on the part of Klein or the grandparents. He also recommended that the court meet with Cristina in chambers without the attorneys or guardians *ad litem* being present.

¶ 107                     *July 18, 2008 Hearing Before Judge McGury*

¶ 108    On July 18, 2008, a hearing was held before Judge McGury. She spoke to Cristina alone in her chambers with only a court reporter present. Cristina, who was 14 years old at the time, told Judge McGury that she wanted Klein to be her guardian. Cristina also told Judge McGury that she did not want to see the pediatric psychiatrist because she did not "have any mental problems" and asked Judge McGury "[w]hy can't Ms. Ammendola leave us alone?"

¶ 109                     *Klein Is Appointed Cristina's Guardian and*
                          *"Cristina's Estate" Is Opened (No. 07 P 7929)*

¶ 110    On July 18, 2008, after Novoselsky's assistance, Klein was appointed plenary guardian of the "estate and person" of Cristina. Thus, the estate for Cristina Zvunca was opened. There is no transcript of the hearing on the petition and it is unclear whether the probate division was informed of the prior proceedings in the law division, or the disposition of appeal No. 1-05-0701 in which this court had specifically noted that Klein had "not been appointed to act as [Cristina's] guardian" and further explained that Klein's interests and Cristina's interests were potentially divergent. *Marshall v. Motor Coach Industries International, Inc.*, No. 1-05-0701, slip op. at 2-3 (2005) (unpublished order under Supreme Court Rule 23). It is also unclear if the probate division was aware of Klein's attempt to intervene in the Illinois action after this court had explained that Cristina and Klein "may disagree about how a potential settlement with defendant should be [distributed] between the wrongful death [claim and Cristina's individual claim for] negligent infliction [of emotional distress.]" *Id.* at 3. Also notable is the fact that, according to the record, on August 6, 2008, less than three weeks after Klein was appointed her plenary guardian, Cristina returned to Romania with her grandparents. It appears that GAL Malkin was unaware that Cristina would be leaving the United States. Although GAL Malkin had stated in his report that the grandparents were leaving, he did not state that Cristina was leaving. Although he asked Cristina about her status in the United States, she told him she was a permanent resident with a green card, Klein had applied for that green card for her, and she could continue to live in the United States for the rest of her life. Also, the grandparents told GAL Malkin that Cristina wanted to stay in the United States and would visit Romania during school breaks. Moreover, GAL Malkin noted that Klein stated that Cristina needed a stable domicile, could not keep going back and forth, needed some tutoring and "guidance in her life," and that "he [would] take that responsibility."

-17-

¶ 111　　　　　　　*Novoselsky's Continued Involvement in the Underlying Action*

¶ 112　　　On July 18, 2008, Novoselsky filed an emergency request to intervene as a matter of right before Judge Richard Elrod. Novoselsky told Judge Elrod that he was "the attorney for both Cristina Zvunca as well as Tiberiu Klein, who [was] the guardian according to the Order of the Probate Court Friday, [and] also counsel for the adoptive parents[.]" Judge Elrod noted that Judge Zwick had previously denied Novoselsky's petition to intervene and told Novoselsky he was not a party to the litigation and asked him to step out.

¶ 113　　　　　　　*Judge Zwick Denies Defendants' Motion to Disqualify Stevens*

¶ 114　　　On July 24, 2008, Judge Zwick denied defendants' motion to disqualify Stevens from further representation in the Illinois action and Greyhound's motion to depose her. Defendants, citing Rule 3.7 of the Illinois Rule of Professional Conduct, had contended that Stevens had impermissibly combined the role of advocate and witness by allowing the minor to reside with her during the 2005-06 school year. Judge Zwick noted that any facts elicited from Stevens "would be cumulative to the factual and expert testimony proffered by numerous other witnesses."

¶ 115　　　　　　　*Cushing and GAL Ammendola Retain Additional Counsel*

¶ 116　　　Meanwhile, as a precaution against the court granting Greyhound's motion to remove Stevens as counsel, Cushing decided he needed to retain additional counsel. Cushing advised the probate division of Greyhound's claims and obtained permission to retain additional counsel. Cushing signed a legal services agreement with the law firm of Leahy & Hoste (the Leahy & Hoste firm) and the Clancy firm whereby each firm was to receive 50% of the total fees in connection with the underlying action. Judge James Kennedy approved the retention of the Leahy & Hoste firm as additional counsel in the underlying action. GAL Ammendola filed a motion for leave to retain the Leahy & Hoste firm as additional counsel for Cristina. Later, on January 16, 2009, GAL Ammendola signed a legal services agreement with both the Clancy firm and the Leahy & Hoste firm whereby each firm was to receive 50% of the total fees in connection with the underlying action.

¶ 117　　　　　　　*Novoselsky's Continued Involvement in the Underlying Action*

¶ 118　　　On July 31, 2008, less than two weeks after he had helped Klein get appointed as Cristina's plenary guardian in the probate division, Novoselsky filed a "Substitution Appearance on behalf of Cristina Zvunca."

¶ 119　　　On August 12, 2008, Novoselsky, on behalf of Klein, individually and as guardian of the person and estate of Cristina Zvunca, and Maria and Vasile Zvunca, filed an emergency motion to remove the guardian *ad litem*. On the same day, he filed revised motions for substitution of judge directed at Judge Zwick. These were transferred to Judge Deborah Dooling.

¶ 120　　　On August 13, 2008, Judge Deborah Dooling denied the motion for substitution of judge. In her written order, Judge Dooling noted numerous counsel had appeared before her on

August 12, 2008, including Novoselsky representing "Klein." She also noted that, before any hearing on the substitution of judge could begin, Stevens had objected to Novoselsky filing anything, claiming that he represented a potential beneficiary and not a named party to the lawsuit. Judge Dooling noted that she had instructed Novoselsky to provide documentation by 5 p.m. on August 12, 2008, indicating that he represented a named party. He had not done so by August 13, 2008, and the motion was therefore denied.

¶ 121    We note that, between May 6, 2008 and August 6, 2009, Novoselsky filed 20 substitution of judge motions directed at Judge Zwick. Some of the motions were filed in the name of Klein, while others were filed in the name of the Zvuncas, or both Klein and the Zvuncas. None of the motions were granted.

¶ 122        *Greyhound Renews Its Effort to Remove Stevens in the Underlying Action*

¶ 123    On August 6, 2008, Greyhound filed a motion to reconsider the order of July 24, 2008, denying its motion to disqualify Stevens and the Clancy firm from representing the decedent's estate or the interests of Cristina. Greyhound argued that it had learned of additional statements made by Cristina which made Stevens's testimony all the more necessary.

¶ 124        *Novoselsky Files Action in Federal Court (No. 08 C 4507)*

¶ 125    On August 8, 2008, Novoselsky, on behalf of "Vasile Zvunca and Maria Zvunca, individually and as next friend of a minor, Cristina Zvunca" filed an action in federal court against defendants Motor Coach, Greyhound, and Tatum (No. 08 C 4507). The complaint also contained allegations of fraud against Cushing, the Clancy firm, Stevens, and guardian *ad litem* Marina Ammendola, as well as allegations against Stevens for physical and emotional abuse of Cristina.

¶ 126        *Judge Zwick Denies Greyhound's Motion to Reconsider*

¶ 127    On May 12, 2009, Judge Zwick denied Greyhound's motion to reconsider the order of July 24, 2008, denying its motion to disqualify Stevens and the Clancy firm from representing the decedent's estate or the interests of Cristina. In her memorandum order, Judge Zwick concluded as follows:

   "This instant action, on behalf of the estate and the minor child, was filed in 2004 by Clancy & Stevens. The parties have engaged in five years of aggressive litigation that has included transnational and international discovery and depositions. All of these depositions were undertaken by Clancy & Stevens. Documents, which are the subject of production requests, motions and privilege orders, number in the thousands, and plaintiffs' counsel have exhibited to both court and opposing counsel an encyclopedic knowledge of this discovery. The case has been the subject of two appellate court decisions decided favorably on behalf of the plaintiffs ***. As far as the standards of effective administration of justice, there are no complaints, from Greyhound or any other source, that Clancy & Stevens are inept, or that this firm, or [its] counsel, have failed in

this litigation to execute their professional responsibility to the estate or the minor child. On the contrary, the record exhibits that Clancy & Stevens and Ms. Stevens have effectively prosecuted this case on behalf of their clients. To remove plaintiff's counsel from continued representation, based on the reasons advanced by defendant, would deny these plaintiffs of the knowledge and experience of their attorneys. And that would be, not only an ineffective administration by this court, but injustice."

¶ 128                    *Cushing, Stevens, and Ammendola Seek Dismissal*
                              *of Federal Action (No. 08 C 4507)*

¶ 129    Cushing, Stevens, the Clancy firm, and GAL Ammendola filed motions to dismiss the amended complaint in the federal action (No. 08 C 4507). On February 6, 2009 (noting the claims against Motor Coach, Greyhound, and Tatum had been severed), the court granted several of the motions to dismiss but concluded that the amended complaint sufficiently alleged a complaint for intentional infliction of emotional distress on the part of Cristina against Stevens. Thereafter, plaintiffs filed a second amended complaint, attempting to reassert the dismissed claims. Defendants again filed motions to dismiss. On June 4, 2009, as before, the federal court granted several motions to dismiss.

¶ 130    Cristina's count for intentional infliction of emotional distress against Stevens was the sole remaining count. As noted earlier, however, Maria Zvunca later submitted an affidavit in this case, dated April 17, 2010. She stated that she and her husband gave permission for Cristina to reside with Stevens. She further stated that Cristina never complained about the way Stevens treated her and that, based on her conversations with Cristina, she believed Cristina was well treated and therefore she "had no reason to even contemplate the possibility of commencing a lawsuit against Ms. Stevens for purportedly mistreating Cristina." Moreover, Maria Zvunca stated that "[a]t no time did I or my husband request or consent to the filing of [federal action No. 08 C 4507]" and that the lawsuit was filed without their knowledge by Novoselsky.

¶ 131    In its June 4, 2009 order, the federal court stated:

"*The only 'right' the Plaintiffs have is the right to petition the Circuit Court to have [GAL Ammendola and Cushing] removed pursuant to 755 ILCS 5/23-3. If the petition is disputed, it is necessary to have a hearing at which the petitioners have the burden of proof.* [Citation.] Furthermore, the validity of an appointment cannot be raised by collateral attack which is what the Plaintiffs appear to be attempting to do with this suit. [Citation.] The decision whether to hire or discharge an attorney is within the exclusive authority of the administrator and the guardian ad litem subject, of course, to the review and approval of the Circuit Court. [Citation.] Furthermore, as officers of the court, attorneys who have entered their appearances in a court proceeding cannot simply walk away from a case. They must receive permission from the court to withdraw." (Emphasis added.) *Zvunca v. Motor Coach Industries International, Inc.*, No. 08 C 4507, slip op. at 2-4 (N.D. Ill. June 4, 2009) (unpublished memorandum opinion and order).

The case was dismissed for want of prosecution on October 22, 2009.

¶ 132                    *Novoselsky Files Action in State Court (No. 09 L 6397)*

¶ 133        On June 1, 2009, Novoselsky filed a complaint in state court (No. 09 L 6397) containing allegations similar to those contained in the federal suit he had filed in 2008. This state court action will be discussed further below.


¶ 134                    *Underlying Action Is Assigned to Judge Daniel M. Locallo*

¶ 135        On July 16, 2009, Judge Daniel M. Locallo was assigned to hear Greyhound's motion for substitution of Judge Zwick for cause. On July 17, 2009, Novoselsky filed an emergency motion to join Greyhound's motion arguing that his conduct and that of his clients had been placed in issue. Judge Locallo allowed Novoselsky's motion to join.

¶ 136        On August 6, 2009, Novoselsky filed eight additional motions for substitution of judge. Some were filed on behalf of Klein, both individually and as Cristina's guardian. Some were filed on behalf of Cristina, a minor. Some were filed on behalf of the estate of Cristina. Some were for cause and some were as of right. Some were motions to join Greyhound's motion.[2]


¶ 137                    *Hearing Before Judge Locallo on August 6, 2009*

¶ 138        On August 6, 2009, during a hearing before Judge Locallo, Novoselsky presented the eight motions for substitution of judge directed at Judge Zwick. The record indicates that the hearing was held to determine whether the clients being represented by Novoselsky–Klein, Cristina, and Cristina's grandparents–were "necessary parties" for the purpose of this litigation. Present during the hearing, besides Judge Locallo and Novoselsky, were attorneys for both defendants, as well as attorneys Peter Hoste and Thomas Leahy. Not present were GAL Ammendola or Stevens. It is unclear whether Cushing was present. Novoselsky argued that he represented Cristina and her estate, that they were necessary party plaintiffs, and they were not being represented in the proceedings. He also contended that Klein, a beneficiary of Claudia's estate, "should be getting money out of this case and he is not being represented."

¶ 139        Novoselsky's position was that "[e]verybody had a conflict." He then delineated the reasons. Novoselsky argued that certain attorneys had a conflict of interest, including Stevens and the Leahy & Hoste firm. Novoselsky stated that "Ms. Stevens' position is [Klein] has his own lawsuit someplace else." He also referred to the federal suit he had filed against Stevens, on behalf of the Zvuncas, individually and as next friend of the minor, Cristina, in support of his argument that Cristina was not being represented by Stevens. He suggested that the Leahy & Hoste firm represented Ammendola. He also argued that Marina Ammendola could not be "the lawyer, the GAL, and the plaintiff." Novoselsky stated that GAL Ammendola was reporting to Judge Zwick even though his clients, including Cristina, wanted Judge Zwick removed. Novoselsky also indicated he would deal with that situation by having GAL

─────────────

[2]It is interesting to note, and most unusual, that *both* defendant Greyhound and Novoselsky on behalf of both beneficiaries were claiming prejudice against them by the judge. They were not joined by the attorneys for Cushing.

Ammendola removed.

¶ 140 Judge Locallo referenced a transcript from July 18, 2008, in which Judge McGury of the probate division spoke to Cristina outside the presence of the attorneys. As noted earlier, Cristina, who was 14 years old at the time, told Judge McGury that she did not want to see Dr. Leventhal because she did not "have any mental problems" and asked Judge McGury "[w]hy can't Ms. Ammendola leave us alone?" We note that Judge McGury responded:

"Well, that's a good question. And unfortunately I'm not the Judge who is going to rule on that because–I should say fortunately maybe for my sake. But because she was appointed by Judge Zwick, she was appointed to be your guardian *ad litem*.

Judge Zwick is the one who would have to deal with any changes or replacements or whatever, but your attorney could certainly put that before Judge Zwick and maybe you can get a chance to talk to her. She's really nice, too. You could talk to her in chambers and tell her how you feel.

*To be honest I'm not real sure about anything that's going on in this case. It's very complicated. And I don't–you know, like I say, I don't really know the ins and outs of this case, but continue to state what you think and what you want because you have to be listened to. You're one of the main people here*." (Emphasis added.)

¶ 141 Judge Locallo was concerned that Judge Zwick did not subsequently speak to Cristina, and that GAL Ammendola did not raise the problem before Judge Zwick. Hoste noted that "Judge Zwick was aware of the hearing [before Judge McGury] because that was brought by a motion by Novoselsky to remove the guardian *ad litem*." Novoselsky noted, however, that Judge Zwick refused to hear the motion.

¶ 142 Hoste also stated that the hearing before Judge Locallo was not on a petition to remove Ammendola as the guardian and "if that was the case," he would have witnesses. Judge Locallo stated that he was not addressing the petition to remove GAL Ammendola. Instead, Judge Locallo clarified that he was "trying to understand who is representing Cristina." Hoste argued that "it's the guardian *ad litem* under the law until that guardian *ad litem* has been removed." Judge Locallo asked: "So a guardian *ad litem* just suddenly goes south on the client and there's no avenue for somebody to say." Hoste responded that there was procedural due process and there were avenues of relief. He also noted that Novoselsky had attempted to remove GAL Ammendola several times. Novoselsky argued that Judge Zwick had not held a hearing on his motion to remove GAL Ammendola based on lack of standing.

¶ 143 Leahy told the court that, with respect to Cristina asking Judge McGury why GAL Ammendola would not leave them alone, he believed the underlying issue was in regard "to an attempt to get Cristina to go to see [Dr. Leventhal]," that GAL Ammendola wanted her to see him, but Cristina did not want to see him. Leahy also stated the issue was whether Cristina was wrong in saying she did not want to be examined. Novoselsky referred to the report that had been prepared by GAL Malkin, who had spoken to Cristina, and stated that the report went beyond that issue. Judge Locallo stated as follows:

"We'll say that [the Malkin report is] an exhibit for this particular discussion, and in the report, she said, you know, I don't like this Ms. Ammendola, okay? And then on July 18th she says the same thing."

¶ 144    Judge Locallo, noting that the case included Cristina's claim for negligent infliction of emotional distress, stated:

> "Now, the child was seven years old. I don't know if she has or not. That's for the fact-finder to find, okay? But it would be devastating to that claim if the young girl is saying, you know, I lost my mom. But, thank God, I've got a good family and they've nurtured me and I'm able to carry on to the best of my ability. That could be pretty detrimental to that particular count. Would you agree?
>
> * * *
>
> You've got a young child. Now, she's 14. And I'm not present when she's talking to Ms. Ammendola. But there is an allegation that she keeps on saying, I'm fine. And Ms. Ammendola is saying, no, you aren't.
>
> * * *
>
> So that's not good. That stinks."

Novoselsky stated: "They don't want her to testify." At this point during the hearing, Novoselsky and Leahy disagreed on whether that scenario was "at play in this particular case." Leahy expressed his understanding that Judge Zwick held a hearing on the underlying issue, which was "whether or not the child should be ordered to go ahead and have an examination and submit to a deposition because that's the issue underlying her count." Judge Locallo stated, " I don't find that the child's interests are being protected." He also stated: "[T]he necessary party should be before the court." Judge Locallo also opined that it was "sad" that Judge McGury was notified of the problem on July 18, 2008, and did not do anything. Therefore, Judge Locallo stated that he was going to allow Novoselsky to come in and argue after he resolved the motion for substitution of judge. Judge Locallo also stated: "If I rule on the motion and let's say I grant [Greyhound's motion for substitution of judge], *** for cause. And then it goes back to [Judge] Maddux. And I believe wholeheartedly because I'm very concerned about what's happening here. I'm very concerned about a situation where I do not believe that her interests are being addressed." Based upon his concerns, Judge Locallo ruled that Novoselsky "should have an opportunity to address the court to address those issues."

¶ 145    Novoselsky was then allowed to address the court before it ruled on the parameters of the order. Novoselsky argued that there was a conflict as a matter of law, noting that GAL Ammendola and Stevens were defendants in the lawsuit. He also argued that, whereas GAL Ammendola's interests were in conflict with Cristina, the Leahy & Hoste firm had a conflict because it represented Ammendola and therefore could not represent Cristina's interests. Novoselsky then urged the firm to withdraw at this point. Leahy noted that he had a professional obligation to prepare the case for trial. However, Judge Locallo stated that he did not believe the case would be going to trial on September 3, 2009, and requested the attorneys to maintain the status quo until he ruled on Greyhound's motion for substitution of judge that was set for ruling on August 17, 2009.

¶ 146    *Novoselsky Files Emergency Motion to Bar on Behalf of Klein*

¶ 147    On August 13, 2009, Novoselsky filed, on behalf of "Plaintiff, Cristina Zvunca, and the Estate of Cristina Zvunca, a minor, through its plenary guardian [Klein]," an emergency motion to "bar any further contact between attorneys Tom Leahy, Peter Hoste, Jeanine Stevens, Thomas Clancy and Marina Ammendola, either in her role as attorney or as purported Guardian ad Litem, and their agents and/or employees pursuant to a request made by the minor, her law parents and guardians, as well as her Plenary Guardian." On August 14, 2009, at a hearing before Judge Locallo, Novoselsky stated that the motion was based on a privileged communication from his clients, purportedly stating that they did not want contact with the named attorneys. Novoselsky stated that he was "the only lawyer representing Cristina" and also indicated that he and attorney Louis Cairo had contracts to represent the family.[3] Judge Locallo granted the motion and ordered that there be no contact until he ruled on the substitution of judge motion directed at Judge Zwick. Hoste informed the court that he planned to get an affidavit from Judge Zwick, through the appropriate procedure, for the purpose of responding to the motion. The court set a status hearing for August 19, 2009.

¶ 148    *Disagreements Arise Between Klein and Novoselsky*

¶ 149    At some point in time, a dispute arose between Klein and Novoselsky. The record contains a series of emails, dated August 17-19, 2009, from Novoselsky, and one from Cairo, responding to Klein, Cristina and the Zvuncas.

¶ 150    In an email dated August 17, 2009, to Klein, Cristina, and Maria Zvunca, Novoselsky stated:

"And I am getting tired of you playing lawyer. Locallo is getting rid of Zwick. Period. End of story. He is dumping all over Leahy, etc. Why in hell would anyone now want to get into a hearing about Zwick and Greyhound where Locallo has already laughed at her written decision?

I am fighting hard for you and for the family. The ONLY problems we have had is when you sent emails to Leahy and the others and I had to deal with the fallout.

Now we are back to the Jim Avery garbage.

Will you please stop this. We are winning and winning big."

¶ 151    Later that day, Cairo sent the following email to Klein, with a copy to Novoselsky:

"As you may hopefully remember, when we met, we discussed the fact that David Novoselsky was going to be responsible for getting the file transferred from Ms. Stevens' office and then I would be responsible for actually trying the lawsuit. This has been an unbelievable experience for David and me because we have never seen a situation where a judge has been unwilling to allow a plaintiff to discharge her attorney. David has done

_____

[3]It appears that Klein had retained Cairo at some point. Klein would later contend that he had discharged both Novoselsky and Cairo prior to the September 22, 2009 court order "appointing" them to represent Cristina's "Estate."

an amazing job with numerous judges trying to get this file and we are now in front of a judge who is a good friend of mine and I am confident that this will get resolved within the next few months. THEN I will be able to do my job and protect you and Cristina.

If you wish to meet to discuss this further please feel free to call me at your convenience."

¶ 152    On August 19, 2009, Novoselsky sent an email addressed to Klein, Cristina, Maria Zvunca, and Cairo, entitled "Bye, bye Zwick," stating:

"I told you this was being done right! On Friday, the Presiding Judge returns from vacation. He will enter an agreed order, which will remove the case from Judge Zwick and give Judge Locallo the power to pretry the case and settle it. No more 'let's go back to Judge Elrod' nonsense.

Locallo can also deal with any fees claimed by Ammendola and Cushing and will not give them anything as he has been very critical of their conduct as you see in the transcripts.

Now, of course, the issue is how hard can he pressure Greyhound's excess carriers. Greyhound has a retained limit of $3,000,000. The next layer is ACE with $2,000,000. After that it is AIG with many, many millions. I have pretried cases with Locallo before where he has taken a strong hand with AIG and has been successful in getting good results.

All in all, today was a total and complete victory for us. No more frozen out. No more Ammendola and Stevens controlling the case."

¶ 153    *Judge Locallo Grants Motion for Substitution of Judge*

¶ 154    On August 27, 2009, Judge Locallo granted Greyhound's motion for substitution of judge from Judge Zwick. Judge Locallo transferred the case to Judge Maddux for reassignment.

¶ 155    *Klein Files Emergency Motion in Probate Case (No. 07 P 7929)*

¶ 156    On September 2, 2009, Judge McGury held a hearing in probate case No. 07 P 7929 on Klein's "*Pro Se* Emergency Motion for Authority, Guidance, Protection of Ward Interest," which was "entered and continued generally." Judge McGury's order also directed GAL Ellen Douglass (the probate court appointed guardian *ad litem* who had replaced GAL Malkin after he withdrew) to "investigate the possible settlement of the Minor's claim(s) against Greyhound and others and to provide [Judge McGury] with her report" and to "take the steps necessary to speak with the Minor." Judge McGury ordered that "the GAL shall appear on 9/3/09 before Judge Locallo [at] 4:15 p.m. [at] the pretrial conference now scheduled to advise the court of this instant order."

¶ 157    *Novoselsky Files Action Against Defendants (No. 09 L 10417)*

¶ 158    On September 3, 2009, Novoselsky filed another action on behalf of Cristina's estate alleging negligent infliction of emotional distress against defendants Motor Coach and

Greyhound (No. 09 L 10417). The subsequent history of this case will be discussed below.

¶ 159        *Judge Maddux Reassigns Underlying Action to Judge Locallo*

¶ 160        On September 3, 2009, at the trial call before Judge Maddux, Stevens answered ready for trial. Novoselsky stepped up and stated that he had filed another lawsuit that morning for Cristina's own personal injuries for emotional distress "because nobody bothered to name the child's estate as the plaintiff, and they are the only possible plaintiff for an action belonging to the child." His position regarding the 2007 lawsuit (No. 07 L 3391), was "my client isn't currently represented in that case, other than as a beneficiary in a supervised estate." Stevens informed Judge Maddux that the count for negligent infliction of emotional distress *had* been filed on behalf of Cristina in the 2007 case, that it was pending and ready for trial. Novoselsky questioned whether that was "ready for trial" and argued to Judge Maddux that "the proper party cannot be a guardian *ad litem*, particularly a guardian *ad litem* who is appointed by a judge who has now been removed from the case." Novoselsky also argued that the guardian *ad litem* was not a plaintiff, the minor could not be a plaintiff, and an estate had been opened for the minor since 2007. Novoselsky argued that he had filed the lawsuit (for Cristina's emotional distress claims) on behalf of Cristina's estate to protect her and further argued that "otherwise, we would have a verdict, which there could be a lot of money trying the case, where Greyhound could probably go up and say there is no proper plaintiff, which is why we filed one to protect the minor."

¶ 161        At this point, counsel for Greyhound informed Judge Maddux that there were now at least four cases filed against Greyhound. These cases included: (1) the underlying action–No. 07 L 3391; (2) the action filed by Novoselsky that morning–No. 09 L 10417; (3) the action filed by Novoselsky in federal court–No. 08 C 4507, which was pending before Judge Leinenweber; and (4) the action pending in federal court in Colorado (referred to earlier as the Colorado action, and which was the first complaint filed in Cook County–No. 02 L 5584, which Greyhound removed to federal court, and in which we have noted, the federal court on April 15, 2005 had ruled that "the case pending in Cook County, Illinois, should take precedence"). Greyhound and Novoselsky also informed the court as to a number of pending lawsuits that Klein had filed in Cook County.

¶ 162        GAL Ammendola then informed Judge Maddux that, in 2008, as the law division appointed GAL, she brought matters to the attention of Judge McGury in the probate division and requested the appointment of a guardian *ad litem* in probate for Cristina regarding custody issues. She also pointed out that the underlying action included an action for Cristina's emotional distress, and that Cristina additionally was a beneficiary in the wrongful death action.

¶ 163        Hoste, noting that Novoselsky had indicated the Leahy & Hoste firm had refused a pretrial in front of Judge Locallo, stated that, until the day before (in front of Judge McGury), "we agreed on all fronts to go forward with the pretrial." He further noted that the plan had been to go forward with the pretrial on September 3, 2009 at 4:30 p.m. with Greyhound being present "and flying in their carrier and excess carrier." Greyhound's counsel confirmed that the carriers were arriving regarding a separate matter but further stated that GAL

Douglass had "insisted yesterday to Judge McGury that the pretrial be cancelled" and "Greyhound really didn't have a voice in it." Greyhound stated it was ready for a pretrial in front of Judge Locallo.

¶ 164    Judge Maddux noted that he had a conflict because Novoselsky was his personal counsel. Following his acknowledgment of a conflict, Judge Maddux proceeded to issue an order transferring both case No. 07 L 3391, and the case filed that same day by Novoselsky, No. 09 L 10417, to Judge Locallo for "all pending matters except for trial," which included determining "whom [*sic*] represents whom" and "enter[ing] appropriate orders."

¶ 165    Stevens then stated: "May I ask rather than this being sent to Judge Locallo it be sent to Judge Elrod? Judge Elrod has–." Before allowing Stevens to explain, Judge Maddux denied plaintiff's counsel's request to assign the matter to Judge Elrod, stating: "You're going to Locallo."

¶ 166    Greyhound then noted that they still had seven pending motions including motions to dismiss, motions for summary judgment, a motion to depose Cristina, and a motion for an independent medical examination. Judge Maddux transferred those motions to Judge Locallo.

¶ 167    *Judge Locallo Sua Sponte Removes Administrator for*
*Claudia's Estate, the Estate's Retained Counsel, and*
*Guardian Ad Litem and Appoints New Guardian Ad Litem*

¶ 168    On September 8, 2009, five days after the case was transferred from Judge Zwick to Judge Locallo, he entered an order after he had "reviewed transcripts, pleadings and the report of Attorney Leonard Malkin." Judge Locallo concluded that a conflict existed between Cristina and Stevens, who represented Cushing. Judge Locallo also concluded that a conflict existed between Cristina and GAL Ammendola. Based on these conflicts, he entered an order removing attorneys Jeanine Stevens, Thomas Leahy, Peter Hoste, Thomas Clancy, the Clancy law firm, and the Leahy & Hoste law firm from any representation of Cristina, in any capacity, in the law division proceedings under court numbers 07 L 3391 and 09 L 10417. Judge Locallo also removed GAL Ammendola in case number 07 L 3391 and appointed attorney David Gubbins as guardian *ad litem* for Cristina under case numbers 07 L 3391 and 09 L 10417. The court order also removed Cushing as administrator. The court order was issued *sua sponte*, without prior motion, notice, or opportunity to be heard by any of the affected persons.

¶ 169    *Cushing Files "Emergency Motion Before the Chief Judge For*
*Resolution of Probate/Law Division Conflict and Motion for*
*Substitution of Judge Locallo For Cause, To Stay Judge Locallo's*
*September 8, 2009 Order, And For Special Assignment To Protect Minor"*

¶ 170    On September 11, 2009, after his removal, Cushing filed a 16-page motion entitled "Emergency Motion Before the Chief Judge For Resolution of Probate/Law Division Conflict and Motion for Substitution of Judge Locallo For Cause, To Stay Judge Locallo's

-27-

September 8, 2009 Order, And For Special Assignment To Protect Minor." The motion was filed by the Clancy firm.

¶ 171 *Court Hearing on September 14, 2009*: *Cushing Seeks Substitution of Judge Locallo and Judge Locallo Discusses Prior Order*

¶ 172 Cushing also attempted to file, on September 11, 2009, a motion for substitution of judge for cause through his attorneys, the Clancy firm, directed at Judge Locallo. At a court hearing on September 14, 2009, Judge Locallo precluded the motion from being filed because Stevens was the attorney who filed it. Judge Locallo stated that "[i]f Mr. Cushing wishes to file a motion for SOJ for cause, he can file it himself." Novoselsky, however, asserted that Cushing was a "supervised" administrator and not an "independent" administrator and needed to get leave of court from Judge Kennedy in the probate division before he could file a motion. Judge Locallo stated that "whoever is in contact with Mr. Cushing, if that's the procedure, then he would have to file it or get permission from Judge Kennedy."

¶ 173 During the September 14, 2009 hearing, Judge Locallo discussed "the reason" for his prior order of September 8, 2009. He stated: "This is a unique set of circumstances, something the Court has not ever had in front of it because of the nature of what is going on here."

¶ 174 As to the conflicts, Judge Locallo noted that the minor had expressed to Judge McGury that the minor had a conflict with GAL Ammendola and that the minor had told Judge McGury that she, the minor, "does not have any emotional problems." Judge Locallo said that if "there is a claim for emotional distress, and if the child is denying that there is emotional distress, that is a substantial conflict, and the Court believes Jeanine Stevens is a necessary witness to be deposed for purposes of that claim of emotional distress. That's one conflict. The second conflict is a lawsuit has been filed in federal court against Jeanine Stevens." Judge Locallo additionally opined that, regardless of the merits of the case, an attorney could not represent a client when, at the same time, the client was suing the attorney. The court stated that a "third conflict" it saw was the fact that Stevens answered ready for trial before Judge Maddux on September 3, 2009, even though Cristina's deposition had not been taken and there was no evidence that the child was under care for the emotional distress, "if it exists, not to mention the Defendants' right to contest the emotional distress, which appears to be in conflict because the child tells Judge McGury she doesn't have any emotional problems, yet Plaintiffs have persisted–or the guardian *ad litem*, Marina Ammendola, has persisted in the claim regarding emotional distress." Judge Locallo felt that GAL Ammendola "did not function properly as a guardian *ad litem*." He also believed that GAL Ammendola had "an allegiance to attorney Stevens and whatever attorney Stevens chose to do but GAL Ammendola was under an obligation to report to Judge Zwick and to urge that Miss Stevens be removed." He stated that "[o]ne of the big problems is when the matter was answered ready for trial, the named Plaintiff was not the Estate of Cristina Zvunca, the named Plaintiff was Marina Ammendola, who was in a dual capacity, according to Judge Zwick, as guardian *ad litem* but also the attorney, and that poses a conflict." Noting he had "no problems" with Leahy or Hoste, Judge Locallo explained that the "reason" each

was removed was "because the Court believed it was necessary to remove Jeanine Stevens and also necessary to remove Marina Ammendola as guardian *ad litem*."

¶ 175    Greyhound then apprised Judge Locallo that it had a number of pending motions and discussed the motions. When Stevens told the court there was "more to this," Novoselsky stated that Stevens had been removed from the case. Judge Locallo then told Stevens she was not going to address the court. Stevens told the court she needed to "know the basis" upon which the court was making its rulings and what materials the court had reviewed and had not reviewed and how it had come to its conclusions. Novoselsky interjected: "Judge, she has no right to cross-examine the Court on a ruling." Stevens then informed the court that "Mr. Novoselsky is the reason that Cristina was never evaluated" and that Judge Locallo had "not had an opportunity to see that." The court then told Stevens to "[t]ake a seat" and told her "I'm not going to respond to you." Novoselsky then discussed the background of the case, including the actions taken by GAL Ammendola and Stevens. Stevens stated that she should be given an opportunity to speak if the court was going to allow Novoselsky to say things that were not true. Again noting it had already found Stevens had a conflict, the court again told her to "sit down." Novoselsky then discussed the status of the case and stated that members of Klein's family who spent time with Cristina and the grandparents were willing to testify, as were friends of the decedent, none of whom were on witness lists, but whom he and Cairo intended to bring before the court. Novoselsky further stated:

> "When the family hired us, we sent a simple letter to Miss Stevens saying we would like your discharge, and we were told to take a hike for the last couple of years. While this is going on and while they're answering ready for trial, they don't have a witness period."

¶ 176    At this point, GAL Douglass, as guardian *ad litem* in the probate case, informed the court that she had received an email from Cristina on September 9, 2009, advising that she wanted to discharge Novoselsky and Cairo, and a motion had been filed, a briefing schedule had been set, and the next court date was October 20, 2009. Judge Locallo responded that "[t]he official role of the guardian ad litem is not to advocate for what the ward wants but instead to make its recommendation to the court as to what is in the ward's best interest." GAL Douglass stated that she thought it was in Cristina's best interest that her desires to have these lawyers discharged be spread of record. She agreed that GAL Gubbins could advise the court whether he thought it was in Cristina's best interest. GAL Gubbins stated that 15-year-old Cristina, as a minor, "cannot contract, she can't fire an attorney or hire an attorney. Only the Court can approve the hiring or firing of attorneys." GAL Gubbins also stated his belief that he should meet with Cristina and report to the court as to whether it was "in her best interest to be able to appear for a deposition." GAL Douglass expressed her concerns that "Cristina does not have the capacity to hire an attorney; and in the probate action, an attorney has been speaking on her behalf presumably who has not been appointed by the court." Novoselsky told GAL Douglass she was wrong. GAL Douglass agreed that GAL Gubbins should be speaking to Cristina and that she could advise him of the efforts they were making to have that happen. However, GAL Douglass further stated that there should be a medical evaluation as to whether or not it would be harmful for Cristina to participate in a deposition, and she did not think it should be just the opinion of GAL Gubbins.

¶ 177    Judge Locallo instructed Stevens to send the file to Cairo and Novoselsky. Stevens stated

-29-

she would not do so and would have to be held in contempt. She informed the court that a motion was pending before the chief judge based on the conflicts that had arisen in the case.

¶ 178          *After Judge Locallo Removes Stevens, Greyhound*
               *Never Seeks Stevens's Deposition*

¶ 179    As discussed earlier, Greyhound had sought disqualification of Stevens, contending she had a conflict of interest by impermissibly mixing the role of witness and advocate. Greyhound contended that Stevens would be a witness to Cristina's emotional distress and sought to depose Stevens. Judge Zwick, in denying Greyhound's motion, explained that attorney disqualification is a drastic measure, and noted that " '[t]rial courts are required to scrutinize motions to disqualify, lest they be used tactically as means of harassment.' " In its motion for reconsideration, Greyhound again argued that Stevens's testimony was "all the more necessary." However, despite Greyhound's contentions regarding the purported importance of Stevens's testimony to its defense, Greyhound never sought Stevens's deposition after Judge Locallo *sua sponte* removed her on September 8, 2009.

¶ 180          *Judge Locallo Bars Cushing's New Counsel From Presenting*
               *Substitution of Judge Motion Directed at Judge Locallo*

¶ 181    Cushing hired attorney Warren Lupel to represent him as administrator. On September 16, 2009, Lupel attempted to present a motion for substitution of judge for cause directed at Judge Locallo. Cushing asserted that Judge Locallo's *sua sponte* order removing him, without a hearing, led Cushing to "believe that the Court harbor[ed] prejudice and/or bias against him and others, including but not limited to the attorneys representing the Plaintiffs and the Guardian *ad Litem* in this matter." Judge Locallo told Lupel that he would not be allowed to participate because he was representing Stevens in federal court (in the lawsuit filed by Novoselsky). This was Cushing's second motion for substitution of judge relating to Judge Locallo which he declined to recognize. However, Judge Locallo also stated that the original order that he had entered with respect to Cushing had been vacated because the court had erroneously believed that Cushing had been hired by Stevens when, in fact, Cushing had been appointed the administrator by Judge Kennedy in the probate division. (At the time of this September 16, 2009 hearing, no order had yet been entered vacating Cushing's prior removal. As we note below, on September 22, 2009, Judge Locallo would, on his own motion, vacate his September 8, 2009 order as it applied to Cushing's removal, *nunc pro tunc* September 14, 2009.)

¶ 182    Judge Locallo stated that he had changed the order removing Cushing and had informed him at a hearing held two days earlier, but that Cushing may not have heard him. Cushing therefore withdrew his motion for substitution of judge for cause.

¶ 183    Regarding Judge Locallo's removal of the attorneys for Claudia's estate, the following discussion occurred:

          "[THE COURT]: The Court is a little bit concerned that the law firm of Clancy & Stevens has been removed. Jeanine Stevens has been removed. There should be no

-30-

further pleadings.

> [CUSHING]: Okay, Judge. I honestly never came into this in 33 years of practicing, this is different than anything I had ever seen. That's why I asked Mr. Lupel at the last second. I don't know who I am allowed to bring or whatever. I am not the lawyer in the case.
>
> [THE COURT]: Now I am going to ask you if you decide to look through Sullivan's, the first question I'm going to ask somebody you are going to consult with: Do you have any relationship with Jeanine Stevens, Clancy & Stevens, Mr. Leahy, Mr. Hoste, or anybody who has ever touched this case.
>
> [CUSHING]: Relationship.
>
> [THE COURT]: Whatever. Okay. I have the highest respect for Mr. Lupel, but the Court does not find that he can skirt around the conflict. Just as this Court does not believe Miss Stevens, one of the basis [*sic*] for her removal is the conflict between her being sued by a client. Whether there is merit to the case or not, the bottom line is you cannot serve two masters when the one master is suing you."

Noting that Cushing had been sued by Klein and was a defendant, Novoselsky offered to go before Judge Kennedy the next day on an agreed order to give Cushing time to consider whether he wanted to withdraw. Novoselsky said he wanted to move the case ahead for Cristina and that he had spoken to Greyhound, which was interested in having a pretrial with Judge Locallo and attempting to settle the case, which Novoselsky thought "would be in the best interest of both the decedent's estate and the child's estate."

¶ 184 At this point, GAL Douglass expressed her concerns to the court regarding Novoselsky's settlement discussions with Greyhound "when there is a pending motion with respect to Cristina's desire not to have Novoselsky represent her." GAL Douglass further noted that Novoselsky was aware that the motion, filed by Cristina, Klein and the Zvuncas, was pending before Judge McGury. Judge Locallo asked Klein to approach the bench. Klein expressed his concerns that Claudia's estate was not being represented. Klein clarified that it was his understanding that Novoselsky was not representing Claudia's estate and Klein apparently wanted a particular attorney to represent the estate.

¶ 185 Cushing again addressed the court and the following colloquy occurred:

> "[CUSHING]: If I could for a second, I know you have given everybody else some time, since you said the order removing me was vacated and not that I need my name heard by your Honor often, at this point, I don't know what capacity you believe I am still standing in this case. If everything is going round and round, in some respect I think I still represent Mr. Klein since I am the administrator of the estate. I don't represent him as a lawyer, but when I have to be part of these settlement negotiations, I have to think in terms of the beneficiaries involved.
>
> [THE COURT]: I understand.
>
> [CUSHING]: Am I still in that capacity?
>
> [THE COURT]: Well, at this point there hasn't been any ruling on that motion.
>
> [NOVOSELSKY]: Judge, there is a problem that Mr. Cushing should be aware of.

[CUSHING]: So after tomorrow we will know.”

After Cushing and Novoselsky briefly discussed Novoselsky's motion to remove Cushing that was pending in the probate division, Judge Locallo stated: “The bottom line is we are going to move forward and we will see what Greyhound has to say.” Cushing, however, again expressed his concerns and the following discussion ensued:

“[CUSHING]: But if, in fact, for the third or fourth time I will be successful in front of Judge Kennedy resisting these motions to remove me and I continue to remain in the case, I still am the nominal plaintiff here, and I believe I will need to hire an attorney myself on behalf of the estates.

[NOVOSELSKY]: Under Ott, your Honor, we may address that.

[THE COURT]: It all depends. Regardless what happens, I am saying at this point–

[CUSHING]: It is a concern. That's all I want to do, make a record. I think it is a concern. I think I will probably still be in the case.

[THE COURT]: Right now you're still in the case.

[NOVOSELSKY]: So it is clear, the pretrial, one of the issues that comes up, there are lawsuits addressing Mr. Cushing personally. I think it would be a little awkward for him to suggest a settlement that gets him out, too, which, means he should walk very carefully and that's why I suggested to him rather than go ahead tomorrow, he may want to consult an attorney to find out whether he wants to stay in this case. He has a malpractice case against him. He is being defended by counsel. I don't know what his position is. We have repeatedly tried to figure out what he's doing here. He is a defendant individually both as against the estate of the minor, and Mr. Klein has filed his own lawsuit against him.

[KLEIN]: Actually–

[CUSHING]: And Judge Kennedy has been advised about that several times in the past and advised Mr. Klein that's not a reason to create an issue to have me removed as administrator.”

GAL Douglass then stated that “speaking of walking very carefully,” she had concerns regarding Novoselsky's representation of Cristina based on an email where Cristina stated she did not want him to represent her. Argument then ensued between Novoselsky and GAL Douglass.

¶ 186    Judge Locallo further explained that GAL Gubbins was the guardian *ad litem* for the law division case. He also stated: “As to one of the dictates that Judge Maddux suggested was to determine who represents who [*sic*] I've already eliminated a few.” As to Cushing, he stated that they would wait to see what happened in the probate division the next day regarding Cushing's removal. Judge Locallo also discussed his removal of Cushing's counsel:

“Please do not file anything else with either Clancy & Stevens, Miss Stevens. I already had removed Mr. Leahy and Mr. Hoste, not for any reason other than the fact that they were representing Marina Ammendola, who has been removed as guardian ad litem.”

Novoselsky then interjected: “I assume that includes Mr. Lupel.” Judge Locallo then stated

that, as to Lupel, "the Court finds that that conflict also exists."

¶ 187     *Court Hearing on September 17, 2009*: *Settlement Discussions Planned*
          *Although Cushing Not Present*; *Conflict Between Novoselsky and*
          *GAL Douglass Regarding Cristina*; *Conflict Between Novoselsky*
          *and Stevens Regarding Her File; and Judge Locallo*
          *Directs Stevens to Turn Over Her File*

¶ 188     On September 17, 2009, another hearing before Judge Locallo was held. Settlement of the case was discussed. Judge Locallo clarified that Novoselsky and Cairo would represent the estate of Cristina Zvunca. With respect to the estate of Claudia Zvunca, the court stated that it had "Mr. Cushing who's the administrator of that estate for the purposes of monitoring by Judge Kennedy." Cushing, however, was not present at this hearing. Stevens, acknowledging that Judge Locallo had told her she was not allowed to speak, advised the court that Cushing had retained additional counsel.

¶ 189     Also, during the hearing, GAL Douglass provided the court with email correspondence from Cristina to her, that had been referenced in the hearing a day earlier. Novoselsky, noting that he had been appointed by Judge McGury to represent Cristina, stated that he would be moving to remove GAL Douglass before Judge McGury. He argued that GAL Douglass was impeding his ability to represent Cristina. As the settlement procedure was discussed, GAL Douglass reiterated her concerns about Novoselsky representing Cristina while a motion remained unresolved–Cristina's motion to discharge Novoselsky that had been filed by Klein. Judge Locallo stated:

> "Miss Douglass, I'm not concerned about the motion in probate court. I have a Guardian *ad Litem* who has made a recommendation. What happens in probate–I respect your division, but as Judge Kennedy pointed out, I don't interfere with his courtroom and I don't anticipate that Judge McGury is going to interfere in my courtroom."

GAL Douglass expressed her concerns that Cristina was being manipulated and she hoped the judge would listen to her opinion as to the "current" manipulation. Judge Locallo stated he understood and then asked Novoselsky to advise him as to a hearing at 2 p.m. Novoselsky explained he would be going to probate court to try to remove Cushing "which has nothing to do with this court." Novoselsky explained: "We had a prior motion filed by Mr. Klein, who, by the way, wants us to continue with it, filed on his behalf as plenary guardian to remove Mr. Cushing in the probate proceeding."

¶ 190     The court then addressed the issue of Stevens turning over her file. Stevens stated that she believed a conflict remained. She stated she had discussed the issue with GAL Gubbins who agreed with her that there was no contract with any attorney on behalf of Cristina. Stevens further told Judge Locallo that GAL Douglass had indicated that she believed that Cristina had been manipulated by Novoselsky and Cairo, and GAL Douglass had grave concerns about whether Cristina was being adequately represented, and had indicated that she did not want Novoselsky acting for Cristina because he was not acting in her best interest. Stevens also noted that there was a comment that it was a disgrace that the case had

-33-

not yet settled. She argued that Novoselsky "improperly said it was never seriously pretried." She noted that "Judge Elrod spent a good ten to fifteen hours throughout 2008 and 2009 trying to settle the case." She further argued that the case "would have settled but for Mr. Novoselsky's interference and Judge Elrod told him to leave [because he had] no standing." Stating that she needed to make her record, Stevens noted that, on September 3, 2009, she had told the court she was ready for trial. She further stated:

> "I've taken 55 discovery depositions, 17 evidence depositions, I have been to the appellate court twice on this case and been successful, we've had extensive motion practice and I explained to the Court–attempted to tell Judge Maddux, Mr. Novoselsky's client, that I wanted this case pretried by the Judge who knew the facts and circumstances of the case. And respectfully, your Honor, you don't because you haven't had five years of experience with this case as Judge Zwick did and you don't have the experience that Judge Elrod did. I said fine we are not only ready for trial, but I will go to pretrial."

Judge Locallo directed Stevens to turn over her file for the copying service by September 24, 2009, and to direct the copies to GAL Gubbins and GAL Douglass. Judge Locallo further directed her to send copies to Cairo's office. The court stated that if Stevens did not comply, he would deal with a rule to show cause.

¶ 191 *Judge Locallo Reinstates Cushing, Appoints Novoselsky*
*and Cairo, and Orders Stevens to Turn Over Her File*

¶ 192 On September 22, 2009, Judge Locallo entered several orders. On his own motion, Judge Locallo vacated his September 8, 2009 order as it applied to Cushing's removal, *nunc pro tunc* September 14, 2009. Despite having reinstated Cushing, and despite his *sua sponte* appointment of a replacement guardian *ad litem* for Cristina, Judge Locallo *sua sponte* appointed attorneys David Novoselsky and Louis Cairo as "the sole attorneys for the Estate of Cristina Zvunca, a minor, and for Cristina Zvunca, a minor, individually," and further ordered that "in the Estate of Claudia Zvunca, deceased, Attorneys Novoselsky and Cairo are appointed to represent the interests of the minor, Cristina Zvunca, only." He ordered Stevens to turn over her files so that a copy could be provided to Novoselsky, Cairo, and GAL Gubbins. Judge Locallo also ordered that the caption be amended to read "Estate of CRISTINA ZVUNCA, a minor, by her Guardian *Ad Litem*, DAVID J. GUBBINS and F. JOHN CUSHING, Administrator *de bonis* [*non*] of the Estate of CLAUDIA ZVUNCA, deceased." Thus, this amended caption replaced Ammendola with Gubbins as the guardian *ad litem*.

¶ 193 *Conflict Arises Between Novoselsky and Klein Regarding*
*Case No. 09 L 6397*

¶ 194 Meanwhile, in the case that Novoselsky had previously filed on June 1, 2009, No. 09 L 6397, (the action containing allegations similar to those contained in the federal suit against Cushing, Stevens and Ammendola), a conflict arose between Novoselsky and one of his clients, Klein. Novoselsky would subsequently amend the complaint and change the named

plaintiffs several times. Initially, the plaintiffs were listed as "the estate of Cristina Zvunca, a minor, through its plenary guardian, Tiberiu Klein, and Cristina Zvunca, an individual entitled to bring suit to protect her own individual rights."

¶ 195　　On October 6, 2009, Klein, *pro se*, filed an emergency motion, on behalf of "the estate of Cristina Zvunca, a minor, through its plenary guardian, Tiberiu Klein, and Cristina Zvunca, an individual entitled to bring suit to protect her own individual rights." Klein raised serious allegations against Novoselsky. Among these was Klein's claim that Novoselsky had filed the suit on behalf of Klein, as plenary guardian of Cristina Zvunca, but that he had not authorized the action. This case has also been the subject of several appeals filed by Klein, either *pro se* or through his counsel, John Xydakis, which remain pending before this court.

¶ 196　　*Novoselsky Continues to Pursue Case No. 09 L 6397 Without Klein*

¶ 197　　On November 3, 2009, Novoselsky amended the complaint and the plaintiffs were changed to "the estate of Cristina Zvunca, a minor, through its guardian *ad litem*, David Joseph Gubbins, and Cristina Zvunca, as an individual, also through her guardian *ad litem*, David Joseph Gubbins, entitled to bring suit to protect her own individual rights." This was done despite Klein's claims, and apparently was based upon Judge Locallo's September 22, 2009 "appointments" discussed earlier. As Cushing has noted, this new version of the complaint added new charges against Stevens including battery, false imprisonment and intentional infliction of emotional harm.

¶ 198　　On January 21, 2010, Novoselsky filed a third amended complaint. This time the named plaintiff was "MB Financial Bank, N.A., as guardian of the Estate of Cristina Zvunca, a minor, as to all law division matters."

¶ 199　　*Judge Maddux Dismisses Case No. 09 L 6397*

¶ 200　　On March 12, 2010, Novoselsky filed a motion to voluntarily dismiss the complaint in case No. 09 L 6397 with leave to refile. According to Cushing, the case was never refiled. According to a circuit court order dated July 13, 2010, entered in the law division by Judge Maddux, case No. 09 L 6397 was renumbered as case No. 10 L 8051, Novoselsky (whose prior representation of Judge Maddux had been acknowledged a year earlier) was granted leave to withdraw his appearance for plaintiff, and the action was dismissed with prejudice.

¶ 201　　*Stevens and Cushing Seek Sanctions Against Novoselsky*
*in Case No. 09 L 6397*

¶ 202　　On August 11, 2010, Cushing and Stevens filed a motion for sanctions in case No. 09 L 6397. On January 18, 2011, the court denied Novoselsky's motion to strike the sanctions motion. On February 3, 2011, Klein filed a motion to intervene in the sanctions motion on behalf of Cristina as her "appointed plenary guardian." The next day, on February 4, 2011, before the motion to intervene had been ruled upon, Novoselsky filed a notice of removal to federal court.

*Federal District Court Sanctions Novoselsky for Subsequent*
*Improper Removal of State Court Action (No. 09 L 6397)*

¶ 204    We take judicial notice of the subsequent history of this case, as outlined in *MB Financial, N.A. v. Stevens*, No. 11 C 798 (N.D. Ill. July 5, 2011) (unpublished memorandum opinion and order), referred to earlier, and subsequently affirmed, *MB Financial, N.A. v. Stevens*, 678 F.3d 497 (7th Cir. 2012). On July 5, 2011, as noted earlier, the federal district court awarded sanctions against Novoselsky in favor of Cristina Zvunca and Stevens. *MB Financial, N.A. v. Stevens*, No. 11 C 798, slip op. at 4 ("Novoselsky is personally liable to [Cristina] Zvunca for $10,155.00, and personally liable to Stevens for $2,432.00."). The award was based on Novoselsky's meritless removal of the state court action, case No. 09 L 6397, to federal court. The district court concluded that Novoselsky's actions constituted "vexatious and unjustified litigation" and that he "created and unreasonably multiplied the proceedings in federal court." *MB Financial, N.A.*, No. 11 C 798, slip op. at 3. The court referred to Novoselsky's arguments as "convoluted," "meritless," and "baseless." *Id.*

¶ 205                    *Seventh Circuit Upholds Sanctions Against Novoselsky*

¶ 206    Novoselsky appealed the district court's ruling to the Seventh Circuit Court of Appeals. On April 24, 2012, the Seventh Circuit affirmed the decision pursuant to the Judicial Improvements Act of 1990 (28 U.S.C. § 1447(c) (2006)), which authorizes an award of attorney fees when a removal to federal court is unreasonable. The Seventh Circuit concluded that Novoselsky's removal "was worse than unreasonable; it was preposterous." *MB Financial, N.A.*, 678 F.3d at 498. The court also awarded additional fees to Stevens and Cushing for their costs in defending the district court's decision.

¶ 207                    *Newly Appointed Guardian Ad Litem Files Emergency Motion*
*to Protect Cristina's Interests From Klein's Detrimental Conduct*

¶ 208    Meanwhile, on October 22, 2009, shortly after Klein had filed his emergency motion in case No. 09 L 6397 and raised the allegations against Novoselsky, GAL Gubbins filed an "Emergency Motion for Court Relief to Protect Cristina Zvunca's Interests from Detrimental Conduct of [Tiberiu Klein,] the Plenary Guardian." GAL Gubbins asserted that, pursuant to *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563 (1995), once a GAL is appointed, the GAL is charged with defending the interests of the minor, and the GAL is vested with "exclusive authority" to proceed on behalf of the minor in the pending lawsuit. GAL Gubbins argued that despite the probate court's appointment of Klein as the plenary guardian of the minor, Klein no longer had any authority "to proceed or act on behalf of the minor in this lawsuit." GAL Gubbins additionally stated that, despite Klein's lack of authority as a result of the GAL appointment, Klein had attempted to act on behalf of Cristina and consistently attempted to disrupt settlement negotiations, including attempting to stay any future pretrial conference. GAL Gubbins further asserted that since the GAL appointment, Klein had, via numerous telephone and email communications to Cristina, provided incomplete, knowingly false and misleading information. Klein had also allegedly offered advice to the minor regarding legal representation, settlement values and suggested

certain courses of action be taken by Cristina in her litigation. GAL Gubbins also claimed that Klein had filed litigation related to Cristina's cause of action concerning the death of her mother that would potentially benefit Klein, but would be of no benefit to Cristina.

¶ 209    *Court Hearing on October 27, 2009: Judge Locallo Bars Klein*
*From Further Participation in Illinois Action and Addresses*
*Cushing's Role in Pretrial Conference*

¶ 210    On October 27, 2009, the trial court held a hearing on GAL Gubbins' emergency motion. Present at the hearing were GAL Gubbins, Novoselsky (on behalf of "plaintiff"), Cairo (on behalf of "plaintiff"), F. John Cushing (as administrator *de bonis non* of the estate of Claudia Zvunca, deceased), attorney Kathryn Mackey (on behalf of defendant Greyhound), attorney Ellen Douglass (as GAL in probate matter No. 07 P 7929), and Klein. Novoselsky informed the court that Klein had fired his attorney, Olson, and Judge McGury, in the probate division, had told Klein that he could not file anything on behalf of the Estate unless he was represented by counsel and had struck his pleadings. GAL Douglass disagreed with Novoselsky regarding the striking of the pleadings. Noting that she had been present at the hearing before Judge McGury, and Novoselsky had not, she noted that only a portion had been struck. Novoselsky then stated that GAL Douglass was wasting time showing up at all the law division proceedings stating:

> "I'm rather sensitive to the fact that I don't know why Ms. Douglass feels it necessary to show up at all these hearings other than to run up a bill. It's not in the best interests of this child, because she has no standing to tell this Court what to do."

Novoselsky also discussed Klein's interference with the Illinois action. GAL Douglass told the court that Klein had filed an objection to the fee petition of the former probate division guardian *ad litem*, Leonard Malkin. She informed the court that Judge McGury had stricken Klein's petition to stay a pretrial in the law division, noting she had no authority to do so. GAL Douglass clarified her position that she believed a pretrial should continue.

¶ 211    GAL Gubbins expressed his position: "This case is about Cristina Zvunca." He stated that, pursuant to the case of *Ott v. Little Company of Mary Hospital*, "the representative of an estate of a minor can appear for and represent the minor in all legal proceedings unless another person is appointed for that person." Therefore, GAL Gubbins stated that once the court appointed him as the GAL, Klein, although Cristina's plenary guardian, had no authority to proceed on her behalf. GAL Gubbins further stated that Klein was in conflict with Cristina because he had a case and "depending on what he gets is going to affect Cristina Zvunca." There was no discussion of how this conflict between Klein and Cristina could be reconciled with Novoselsky's earlier claim of a conflict-free representation of both. Noting that he had been in the case for six weeks, GAL Gubbins further opined that it was "obvious" that Klein was trying to serve his own interests. GAL Gubbins referred to Klein's contention that GAL Gubbins had "appointed" Novoselsky as "ludicrous." GAL Gubbins requested an order barring Klein from participating in this case, and also requested that "a corporate fiduciary institution, such as Northern Trust, [be] appointed plenary guardian, [so that the parties could] proceed on with the pretrial and, if necessary, the trial."

¶ 212    Klein, however, stated that GAL Gubbins's representations were untrue. When Novoselsky attempted to interrupt, Klein noted that when Novoselsky made his appearance in the case, he did so on Klein's behalf. Klein stated that he had hired Novoselsky and Klein was "very disturbed that Mr. Novoselsky [was then] taking an adverse position to [Klein]."

¶ 213    Novoselsky stated that "somebody need[ed] to represent this child." Noting that both Judge Locallo and Judge McGury had appointed him, he stated that "the only lawyer who represents the Estate of Cristina Zvunca or Cristina Zvunca before this court system is myself and Mr. Cairo." Therefore, despite Novoselsky's prior successful effort to have Klein appointed plenary guardian of Cristina (over GAL Ammendola's objections), and despite his February 21, 2008 letter stating that he had been "retained by Klein to represent his interests" and his resistance to the claimed conflict affecting his dual representation of both Klein and Cristina, Novoselsky stated that he believed they needed "a fiduciary who does not have a conflict to act as the guardian of the estate of this child in the law division proceedings."

¶ 214    Klein expressed his concern that Novoselsky had a conflict of interest with both Cristina's estate and Claudia's estate. He contended that Novoselsky had brought in Schroeder, who formerly had been Greyhound's counsel on the case for five years, and that Novoselsky had Schroeder file a motion on behalf of the plaintiffs in the probate court matter. Novoselsky responded that the filing was done in error and had been withdrawn. The trial court ordered that Klein was barred from filing anything with respect to the underlying Illinois action.

¶ 215    Also discussed at the October 27, 2009 hearing was an upcoming pretrial conference and the roles of the various parties and attorneys, including Cushing. GAL Gubbins expressed his opinion that he, and not Klein, had the "exclusive authority to proceed on behalf of the minor in the pending lawsuit." Novoselsky agreed that he did not represent Cushing or the estate of Claudia Zvunca. He stated that he represented Cristina and her estate, but also "Cristina Zvunca's interests as the beneficiary in her late mother's estate." Novoselsky, as Cristina's attorney, stated that GAL Gubbins should speak for Cristina.

¶ 216    Novoselsky also asserted that "Mr. Cushing, no more than Mr. Klein, can be here pro se, nor participate pro se. He is not the attorney for Claudia's estate; he is simply the representative. That estate has lawyers." Novoselsky also stated that if Cushing was "unable to procure a lawyer without a conflict, he doesn't have to participate in the pretrial because he's then in the same position as Mr. Klein. And I don't want Mr. Cushing in the position of independently trying to negotiate a settlement which would conflict." Novoselsky asserted that Judge Locallo had already found that Cushing had a conflict with Cristina. Novoselsky then stated that Cushing would have to get leave from Judge Kennedy to hire an attorney who did not have a conflict.

¶ 217    Cushing disagreed with Novoselsky's representation that Cushing had a conflict with Cristina. The court set a status date. Novoselsky informed the court that he would file a motion with regard to Cushing's conflict with Cristina.

¶ 218    Cairo requested the court consider telling the parties who could participate at the pretrial. Novoselsky then discussed his viewpoint on Cushing's role:

        "And here's what's going to happen. Mr. Cairo is right. Mr. Gubbins thinks it's worth

-38-

X. Mr. Cushing says, Well, I don't think it's worth that, I won't agree to that. And we're back to square one. You have to have one voice here. And Mr. Cushing can't do it; he's a party defendant with this estate. He's also the one who, under his watch, nobody appealed the order on the survival count. He is–you've already made those findings.

We can't have anyone other than Mr. Gubbins expressing opinions or participating. If Mr. Cairo and I are there, we are there as attorneys. Mr. Gubbins calls the shots. If Mr. Cushing is there, we have somebody, (a), with a conflict, and (b), somebody who is a second voice and should not–it's not in the best interests of the child."

¶ 219　Novoselsky also asserted that, should there be a settlement, Cushing's role, as supervised administrator of the estate of the mother, would be limited to reporting to the probate division as to whether he recommended the settlement. He further stated that "[u]ntil that time, there's nothing for him to do."

¶ 220　Judge Locallo stated that he was inclined to have GAL Gubbins at the pretrial and would make a determination at the next status hearing whether he thought it was "in the best interests to have anybody else there," including GAL Douglass. Novoselsky, who had earlier expressed his opinion that GAL Douglass should not be involved in the law division proceedings, informed the court that he hoped to get GAL Douglass removed in probate before the next status hearing in the law division.

¶ 221　The court asked Cushing if he anticipated that an attorney would appear. The following discussion occurred:

"[CUSHING]: Judge, as we talked last time we had the pretrial, there were concerns I had that I thought it was best at that time, as I explained to the Court when we were having our pretrial conferences, that it might be best for the purpose of settlement that ... that I didn't.

[COURT]: No.

[CUSHING]: I mean, I mentioned to you that, you know, putting another lawyer involved at this point, if truly the parties are close to settling, the last thing I want to do is try to stop or hinder that settlement.

If I bring an attorney, it would be under contract, and I will assign someone for a contingency fee, and, as I explained to the court, I don't know how that helps us.

[NOVOSELSKY]: Judge, I would agree with Mr. Cushing. I would suggest to him that since he knows Mr. Gubbins, I presume he respects Mr. Gubbins, he presumably knows–

[CUSHING]: For the record, I do respect Mr. Gubbins.

[NOVOSELSKY]: –I presume he knows and respects Mr. Cairo, and I presume he knows and respects you, that perhaps it's in the best interests of the estate that he represents that he simply rely upon those individuals rather than present a theoretically divided front. I just make that suggestion.

Of course, any settlement, as your Honor noted before, would have to be reported to the various parties. So no one is suggesting that Mr. Cushing be left out in the dark if there's a proposed settlement.

[CUSHING]: And, again, Judge, I have an attorney that's ready to get involved in the case. I believe I could have someone here. But, again, I think that–I don't know how that's going to foster the possibility of a settlement at this moment–."

¶ 222     *Judge Locallo Orders GAL Gubbins to Conduct Settlement Negotiations*

¶ 223     On November 6, 2009, Judge Locallo entered an order setting a pretrial conference before him for November 17, 2009. The order directed GAL Gubbins to "conduct settlement negotiations on behalf of Cristina Zvunca, a minor with defendants, Greyhound and Motor Coach." The court further ordered that "Court Appointed Attorney for the minor, Louis Cairo will be present to assist the Guardian Ad Litem during said Pretrial Conference." The court order further stated: "Any and all other party or persons will be precluded from attending or participating on behalf of Cristina Zvunca, a minor, at said Pretrial Conference." The order does not address the representation of Claudia's estate and Cushing now characterizes this order as giving GAL Gubbins "a broad mandate over the wrongful death case."

¶ 224     *November 17, 2009 Order Entered "On the Court's Motion"*

¶ 225     On November 17, 2009, Judge Locallo entered a written order, "on the Court's motion" appointing Northern Trust Company as guardian of Cristina's estate. It is unclear from the record whether Northern Trust Company was informed of, or accepted, its appointment and, if so, by whom. As Cushing notes, the order was entered without notice to him.

¶ 226     *Court Hearing on December 1, 2009*

¶ 227     On December 1, 2009, the court heard Klein's motion for reconsideration of October 27, 2009 order. Novoselsky was present. Klein would later file a motion to remove Novoselsky for improper conduct during the December 1, 2009 hearing.

¶ 228     *Cushing Retains Additional Counsel*

¶ 229     Cushing retained attorney Scott Golinkin. On December 8, 2009, Golinkin entered an appearance in the underlying Illinois action.

¶ 230     *December 11, 2009 Order Entered "On the Court's Motion"*

¶ 231     On December 11, 2009, despite the order appointing Northern Trust Company, Judge Locallo entered another order in which MB Financial Bank, N.A., was substituted for Northern Trust Company as guardian of the estate of Cristina Zvunca, a minor. The order states as follows:

"This matter coming to be heard on the court's motion, and based on the authority vested in this court pursuant to the decision in *Ott v. Little Company of Mary Hospital*, [273 Ill. App. 3d 563 (1995),] based upon the representations made before this court by [Klein] stating that [Klein] had no intention of interfering with any portion of the causes of action available to or rights of recovery on behalf of Cristina Zvunca, and also based

-40-

upon the statements made before this court by the guardian *ad litem* in the Probate Proceedings that a financial institution would have to be appointed to protect the recovery of funds which are the sole asset of the Estate of Cristina Zvunca as well as the Estate of the minor's deceased mother [Claudia Zvunca];

It is hereby ordered that MB Financial Bank, N.A. is appointed as the Guardian of the Estate of Cristina Zvunca, a minor, and is directed to act *in that capacity* with regard to any cause of action that has or may accrue to Cristina Zvunca in the Law Division of the circuit court of Cook County, and shall act as her guardian *as to any damages sustained by Cristina Zvunca as a beneficiary of the Estate of Claudia Zvunca, deceased.*

It is further ordered that this court's guardian *ad litem*, David Gubbins, as well as the attorneys appointed by this court to represent the interests of Cristina Zvunca, David Novoselsky and Louis Cairo, are directed to cooperate with and assist MB Financial Bank, N.A. in its role as guardian of the Estate of Cristina Zvunca, a minor." (Emphases added.)

¶ 232    The record is unclear as to what activities transpired that prompted the trial court to enter its own order. In any event, the only role of MB Financial Bank, N.A., in the wrongful death action was to *protect recovery of funds* which might accrue to Cristina as a result of a settlement or verdict. Also, although the court directed the "court-appointed" attorneys (Cairo and Novoselsky) only "to cooperate with and assist" MB Financial Bank, N.A., we note that Novoselsky later asserted that he represented MB Financial Bank, N.A. It also appears from the record that Novoselsky later asserted that Judge Locallo's order that "directed" MB Financial Bank, N.A., to act as Cristina's guardian with regard to any cause of action that had accrued, or may accrue, to Cristina in the law division, authorized MB Financial Bank, N.A., to both prosecute the instant action on Cristina's behalf and file additional lawsuits on her behalf. It is unclear from the record, however, whether Novoselsky entered an appearance on behalf of MB Financial Bank, N.A.

¶ 233                    *Klein's Conflict With Novoselsky Continues*

¶ 234    On December 17, 2009, Tiberiu Klein, as Cristina's plenary guardian, filed a *pro se* motion to reconsider or vacate the November 17, 2009 order which had, among other things, replaced Klein with another guardian, Northern Trust. Klein contended that he had intervened in the Illinois action by Novoselsky but that Novoselsky was discharged and was "refusing to withdraw his appearance on behalf of the plenary guardian." Klein argued that he and the Zvunca family had discharged Novoselsky and Cairo, the attorneys representing Cristina's estate in the Illinois action, a discharge he asserted was allowed on September 2, 2009, by Judge McGury in the probate division.[4] He also argued that, despite being

---

[4]Judge McGury's September 2, 2009 order continuing Klein's *pro se* motion does not expressly state that Novoselsky had been discharged. On January 5, 2010, however, Judge McGury entered an order stating that "David Novoselsky is hereby discharged as the attorney for the Estate of Cristina Zvunca and the person of Christina [*sic*] Zvunca, Nunc Pro Tunc as of December 21, 2009."

discharged, Novoselsky had filed the September 3, 2009 action for personal injury on behalf of Cristina's estate as plaintiff against the same defendants in the underlying action "avoiding to name Tiberiu Klein, Plenary Guardian, the legal representative for Cristina Zvunca estate." Klein argued that, despite the fact that Novoselsky and Cairo had been discharged by Cristina's plenary guardian and the Zvunca family, Novoselsky, on September 27, 2009, had suggested that the court appoint them to represent Cristina's interests, since the court had removed the previous lawyers. He also noted that the court had granted GAL Gubbins' motion barring Klein from any participation in the Illinois action, which Klein asserted prevented the "exercise of his duties and mandate for Cristina Zvunca estate." Klein also sought removal of Novoselsky. Judge Locallo denied the motion on December 17, 2009.

¶ 235 *Underlying Case Reassigned to Judge William H. Haddad*

¶ 236 On December 17, 2009, Judge Locallo entered an order transferring the underlying action to Judge Maddux for reassignment. The case was assigned *instanter* to Judge William H. Haddad on December 17, 2009. On December 24, 2009, Judge Locallo retired.

¶ 237 *Novoselsky Files Emergency Motion to Consolidate and Transfer*

¶ 238 On December 30, 2009, Novoselsky filed an emergency motion on behalf of "the Estate of Cristina Zvunca, a Minor, through its Court-Appointed Guardian, MB Financial Bank, N.A. and its counsel, David A. Novoselsky." He requested that the court transfer the various pending lawsuits and all pending matters, in both the probate division and law division (No. 03 P 8718, No. 07 P 7929, and No. 09 L 6397), to Judge Haddad, for consolidation with No. 07 L 3391.

¶ 239 Novoselsky noted that the "underlying matter [before the law division was] an action for wrongful death." He did not refer to the counts for Cristina's own emotional distress claims. Novoselsky further stated that, although both a decedent's estate and a minor's estate had been opened, "no recovery or potential recovery [would] pass through either estate." He stated that recovery was "paid directly to the surviving beneficiaries." He further argued that, although the minor's estate was opened when she was "residing in Cook County, she had since left the United States and [was] currently residing with her adoptive parents in Romania." He made no mention of his former client, Klein, whom Novoselsky had assisted in becoming plenary guardian. As noted earlier, on July 18, 2008, the estate for Cristina Zvunca was opened when Klein was appointed plenary guardian of the "estate and person" of Cristina, with Novoselsky's assistance. (We note that, although Judge Locallo's December 11, 2009 order appointing MB Financial Bank, N.A., as "guardian of the estate of Cristina" was made "based upon representations made before [the] court" by Klein who stated he had "no intention of interfering with any portion of the causes of action available to or rights of recovery on behalf of Cristina," Klein was not removed as plenary guardian.)

¶ 240 Novoselsky further contended that there was "no jurisdiction to maintain the minor's estate as a separate entity or separate and distinct from the guardian of the Estate appointed by the Law Division which has since been appointed for the purpose of prosecuting this cause of action." Novoselsky further stated that "[i]n light of these disputes and given the

multiplicity of actions and competing claims as to the identity of the party/attorneys representing the interests of the minor beneficiary or the decedent's estate, this Court assigned this matter to the Honorable Daniel M. Locallo on September 3, 2009." Novoselsky contended that "[u]pon learning that Judge Locallo was to retire, various individuals [had] attempted to solicit orders from various other judges including but not limited to judges of the Probate Division to go behind or to modify/vacate the rulings of Judge Locallo pursuant to the direction of this Court." Citing *People ex rel. Carey v. Covelli*, 61 Ill. 2d 394 (1975), and *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein*, 61 Ill. 2d 229 (1974), he argued that this was "improper and inconsistent with *** the proper manner of determining these issues." He further requested that the matter be transferred to a judge other than Judge Maddux; the motion was transferred to Judge Elizabeth M. Budzinski.

¶ 241                          *Judge Haddad Accedes to Judge Locallo's Rulings*

¶ 242      On January 14, 2010, Judge Haddad held a hearing and noted there had been no special administrator appointed in the law division "to carry the case through." The court stated that although it was "just a formality" it was "supposed to be done." Novoselsky indicated that he was drafting the motion for the appointment and recommended that MB Financial Bank, N.A., be appointed as the special administrator. The trial court also stated that "[p]robate administrators and guardians are welcome to watch this trial, but–and to participate as they see fit. I'm certainly not going to bar them from their work." The court noted that Cairo and Novoselsky had been appointed to represent Cristina in her personal action for emotional distress and her interests as the beneficiary of Claudia's estate. The court further explained its role as follows: "the trial judge will either approve settlement or approve the judgment and the verdict, *** will then apportion the recovery of each party, approve fees and costs, and then send the matter, and only then, to Probate, who will be authorized to administer the actual distribution of proceeds." Cushing and his attorney, Scott Golinkin, were present and did not voice any disagreement or objection. The court entered a written order that stated in relevant part as follows: "This court accedes to rulings of [the prior law division trial judge] to enable an orderly resolution or trial of this matter forthwith, and to respond to the variable interests of the participants hereunder under *Will v. Northwestern University*[, 378 Ill. App. 3d 280 (2007),] and *Ott v. Little Company of Mary Hospital*, [273 Ill. App. 3d 563 (1995)]." The order further stated:

> "With the consent of the parties this court will continue to conduct pretrial settlement discussions under Supreme Court Rule 63, and further confer with the guardian *ad litem*. In these discussions the court welcomes input from all beneficiaries, including representatives of the minor and decedent's spouse. As to any possible resolution of this case, the court is proceeding in conformity with the joint probate-law division order of March 2007 referenced and incorporated in this order today."

¶ 243                       *Further Trial Court Proceedings in Underlying Action*

¶ 244      On January 21, 2010, the court held a status conference and set a case management schedule. The court entered a detailed written order which included the next status date of

January 28, 2010. GAL Gubbins sent a copy of the order to Golinkin.

¶ 245    Also, on January 21, 2010, Novoselsky filed a third amended complaint in case No. 09 L 6397, described earlier. The named plaintiff was changed to "MB Financial Bank, N.A., as Guardian of the Estate of Cristina Zvunca, a Minor as to all Law Division Matters."[5] Similar to the complaint that Novoselsky had filed in federal court in August 2008 (No. 08 C 4507), described earlier, the named defendants were Stevens, the Clancy firm, GAL Ammendola, Leahy, the Leahy & Hoste law firm, and Cushing.

¶ 246    *Judge Haddad Appoints Special Administrator and Cushing Objects*

¶ 247    On January 28, 2010, the court held a status conference. Neither Cushing nor Golinkin attended. The court did not enter any order regarding the removal of Cushing as the administrator of Claudia's estate nor enter any findings regarding a conflict regarding Cushing. Nonetheless, pursuant to a motion brought by MB Financial Bank, N.A., the trial court appointed MB Financial Bank, N.A., as special administrator of the estate of Claudia Zvunca, deceased. The record does not contain a copy of the motion. As noted earlier, however, Novoselsky stated during the January 14, 2010, hearing that he was drafting the motion for the appointment, and the January 28, 2010 court order appointing MB Financial Bank, N.A., as special administrator was prepared by Novoselsky.

¶ 248    On February 17, 2010, Cushing filed a motion to reconsider the January 28, 2010 order appointing MB Financial Bank, N.A., as the special administrator. Cushing argued, among other things, that the trial court had no authority under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2008)) to appoint a special administrator because there was a probate administration in place, for which Cushing was the supervised administrator *de bonis non*.

¶ 249    On February 23, 2010, the court held a hearing on Cushing's motions. The court stated that the appointment of MB Financial Bank, N.A., was "an administrative move" to "clean up the record." Cushing raised several arguments regarding the appointment. He further contended that the appointment "effectively and completely eviscerate[d] any role Mr. Cushing [had] in this case."

¶ 250    The court disagreed with this latter contention, stating that Cushing was the "probate" administrator and would "get this case when we are done here." The court also opined that it did not want an administrator who had "been accused of *** having a conflict" and that "the idea here is to have a clean case so we can proceed to trial." Regarding the purported conflict on the part of Cushing, the court made no determination and instead stated "I have nothing to go on here one way [or] the other." The court also asked Cushing, if the appointment of the special administrator did not satisfy the statutory requisites, what difference that made "in the final analysis of this case [and] in terms of the rights of the parties here." Cushing responded that it was "Mr. Cushing who was appointed by the probate court [and] the person who should be pursuing that." Cushing also argued that the court

---

[5]As we have noted, on January 5, 2010, Judge McGury entered an order in the probate division stating that "David Novoselsky is hereby discharged as the attorney for the Estate of Cristina Zvunca and the person of Christina [*sic*] Zvunca, Nunc Pro Tunc as of December 21, 2009."

could not appoint MB Financial Bank, N.A., as special administrator merely because the court believed it was convenient. The court recognized that Cushing was an administrator, but opined that "he is in probate." The court further opined as follows: "I know he will do a fine job once this case is over with here, and we will be happy to turn it over to him at that point in the probate division and the good judges there, but for my purposes here, this is a formality, and I question this motion." On February 24, 2010, the trial court entered a written order denying Cushing's motions. The order did not contain a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶ 251                    *Court Hearing on February 25, 2010*

¶ 252    On February 25, 2010, the court held a hearing. At the outset, GAL Gubbins informed the court that, a half hour earlier, Judge Budzinski had transferred certain cases, including related legal malpractice cases, to Judge Haddad for all purposes. The court stated that the hearing was only to discuss the issue of the file being turned over in the underlying case. The Clancy & Stevens firm had turned over the file, comprised of 44 boxes, to a record copy service, which estimated the copying cost to be $18,000 or more. Judge Locallo had not wanted to authorize the expenditure because he did not believe it was fair to the minor. The Clancy & Stevens firm had then retrieved its file.

¶ 253    Attorney David A. Eide, who was representing the Clancy & Stevens firm, explained to the court that his clients wished to assert their lien right. Judge Haddad stated that he had acceded to Judge Locallo's appointment of the attorneys and had set the case on "a very expeditious case management schedule," which if not met, would have consequences. He stated that "the question is not whether they have standing or whoever else has standing. Right now, they're the plaintiff and I'm ordering that the file be entered." He then discussed the issue of turning over the file and the attorney lien.

¶ 254    Stevens also expressed her concerns to the court regarding turning over the file in a situation where her client had not fired her but, instead, a judge had "fired her." Judge Haddad stated that the case was not going to be delayed and he was "ready, willing, and able to allow [the GAL and attorneys appointed by Judge Locallo] to proceed with the case." He further stated:

> "I am not familiar with the conflicts and I don't want to go into them other than to know that there were conflicts in this case. And I'm not so much interested in whether it's true, but what the perception is and the appearances are. And Judge Locallo heard this fully and made his decision. *Your opportunity to be heard existed back then*. It's now being exercised at this point and I'm simply responding to what you have to say from my view from the bench, that I have to follow the law in this case, and the law is that this case has to go to trial, that these are the lawyers that have been put in place, this is the hand that was dealt to this Court. And I agree with everything that has preceded me both in Probate and in here." (Emphasis added.)

Stevens refused to turn over her file and the judge issued a rule to show cause and set a hearing date.

¶ 255    Attorney Richard Lehman, representing Cushing, then presented a motion for substitution

of judge as of right in the legal malpractice case that had been filed against Cushing. Novoselsky objected, arguing that Judge Haddad had previously made a substantive ruling. Judge Haddad therefore allowed Novoselsky to file a written response.

¶ 256                          *Court Hearing on March 2, 2010*

¶ 257     On March 2, 2010, Judge Haddad sent all of the cases that had been transferred to him from Judge Budzinski back to her for reassignment. He stated he would deal only with the underlying case. Judge Haddad then discussed an open letter to him dated February 16, 2010 that bore Cristina's name but was unsigned. The letter concerned her displeasure regarding current representation by Novoselsky, Cairo, and GAL Gubbins, and expressed favor for Cushing, Stevens and GAL Douglass. Judge Haddad also stated that he received a letter from Novoselsky under seal that was also sent to both GALs, regarding the February 16, 2010 letter and that Novoselsky alleged coaching had been done and alleged improprieties as to professional conduct. Judge Haddad also noted that allegations had been made regarding falsehoods perpetrated upon the court for which he would conduct a hearing, but would do so after the trial so as not to impede the justice position of the then eight-year-old wrongful death case.

¶ 258     Judge Haddad then addressed the petition for rule to show cause as to why Stevens should not be held in contempt for refusing to turn over her file. Judge Haddad concluded that it was inadequate because, among other things, it was not verified and did not include the court proceedings of February 25, 2010. He therefore struck the petition, with leave to amend.

¶ 259     GAL Douglass informed the court that she had been in touch with Cristina as requested, that Cristina would come for a deposition on April 12, 2010, and that GAL Douglass had so informed GAL Gubbins.

¶ 260              *Greyhound Renews Its Motion for a Rule 215 Examination*

¶ 261     As noted earlier, on March 8, 2008, Greyhound had moved for a medical examination by its own expert pursuant to Illinois Supreme Court Rule 215 (eff. July 1, 2002). On March 3, 2010, Greyhound renewed its motion.

¶ 262     *Greyhound Files Supplemental Brief in Support of Its Motion to Dismiss*
         *and Alternative Motion to Bar Cristina's Testimony*

¶ 263     Also on March 3, 2010, Greyhound filed a supplemental brief in support of its motion to dismiss and, alternatively, motion to bar Cristina's testimony. Greyhound argued that it had been prejudiced by Cristina's refusal to cooperate with multiple court orders, including Cristina's "failure to attend numerous court-ordered psychological examinations just to determine her competency to testify."

-46-

¶ 264                    *Cushing Files Interlocutory Appeal (No. 10-0768)*

¶ 265          On March 19, 2010, Cushing filed the interlocutory appeal that was the subject of our opinion in *Cushing I*, 2012 IL App (1st) 100768, issued on February 10, 2012. There, we held that the trial court lacked authority to appoint a special administrator under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2008)) because letters of office had already issued and a probate estate had been opened. We explained that F. John Cushing, the administrator *de bonis non* of the estate of Claudia Zvunca, was the personal representative of the deceased person, and that "[u]nless and until he [was] removed, he [had] the exclusive authority to bring the wrongful death action." *Cushing I*, 2012 IL App (1st) 100768, ¶ 100. We also noted that Cushing, as the administrator, possessed the sole right to conduct and control the suit. *Id.* We therefore vacated the circuit court's order appointing the "special administrator."

¶ 266                        *Court Hearing on March 30, 2010*

¶ 267          Judge Haddad held a court hearing on March 30, 2010 and discussed Cristina's deposition. Present were attorneys for both defendants, GAL Gubbins, attorney Colin O'Malley (of the Goldberg, Weisman & Cairo law firm), Novoselsky, and Olson (on behalf of Tiberiu Klein). Cushing, Stevens and GAL Ammendola were not present. After noting that Cristina would be arriving in the United States on April 5, Judge Haddad directed her to meet with her attorneys on April 12 or 13 in private to protect her privacy and the attorneys' right to prepare the client and "to foster better confidence and trust by and between the parties here, the attorney and client." This meeting was to take place at Cairo's office and Novoselsky confirmed to the court that he was not planning on preparing or presenting Cristina, but was in court to do the motion practice. Judge Haddad also stated that Cristina was to appear in his courtroom for the deposition and her grandmother could be present. Judge Haddad would also be present to protect the interest of the minor. The court noted that the Clancy & Stevens firm was tendering the case file to the plaintiff's attorney; the court ordered that Greyhound's motion to withdraw its petition for rule to show cause was entered and continued pending the filing of legal fees and costs.

¶ 268          Novoselsky informed the court of the status of the related cases that had been transferred to Judge Haddad that he had transferred back to Judge Budzinski for reassignment. Two of those cases–the suit filed on June 1, 2009 by Novoselsky (09 L 6397) (in which Cushing had taken an "SOJ" from Judge Haddad) and a suit filed by Klein in his individual capacity–had been assigned to Judge Pierce. Novoselsky had asked Judge Pierce to recuse himself. Judge Pierce, concerned that the parties should not be in front of multiple judges, sent the cases to Judge Maddux. (It is not clear why Novoselsky did not request that the cases go back to a judge other than Judge Maddux as he had done when he filed the emergency motion to consolidate and transfer on December 30, 2009.) Novoselsky then further informed Judge Haddad that "Judge Maddux, reviewing the record and hearing from all the defense attorneys, said, fine, I'm going to put everything other than the case [currently] in front of Judge Haddad on the stay calendar." Judge Maddux had also stated that any future lawsuits that might be filed would also be put on the stay calendar.

-47-

¶ 269        *Judge Haddad Meets With Cristina on April 7, 2010*

¶ 270        On April 7, 2010, Judge Haddad met with Cristina and her grandmother along with a Romanian interpreter. The purpose of the meeting was for Judge Haddad "to be satisfied that she is fully capable and competent to testify and that she's been informed by me of the importance of doing so." After meeting with Cristina, Judge Haddad told her that she must appear for deposition on April 14, 2010.

¶ 271        GAL Douglass expressed her concerns and stated she believed it would be beneficial for Cristina to first see a psychologist before, and after, testifying to make certain that Cristina was prepared to handle any revesting of the incident that might occur. GAL Gubbins disagreed noting that there could be dire consequences to Cristina regarding the litigation if the deposition did not proceed. Cairo also expressed his concern that "the purpose here is to have her seen by a psychologist and then come in on an emergency motion the very next morning when the deposition is scheduled because some psychologist may say, as the person in Romania said, oh, this person has posttraumatic stress disorder."

¶ 272        Judge Haddad informed the parties that there were two aspects to his conversation with Cristina. The first was that Cristina disagreed with Judge Locallo's decision to appoint Cairo's office, and Novoselsky in particular, to represent her. Judge Haddad additionally stated that Cristina was relying mainly on what appeared to be representations from Klein.

¶ 273        As to the second aspect of his conversation with Cristina, which was "the stress," Judge Haddad stated "I'm not a psychologist but she seemed to be very composed when she spoke to me, very, very well composed and extremely articulate." Judge Haddad decided he would neither deny nor order Cristina to see a psychologist. Cairo, however, expressed concerns about the potential discoverability of any visit Cristina would have to a psychologist. Judge Haddad decided that the deposition would be bifurcated and any issues as to the count on emotional distress would be put to another time.

¶ 274        *Greyhound Seeks Sanctions After Cristina Fails to Appear*
             *for Her Deposition Scheduled for April 14, 2010*

¶ 275        Cristina failed to appear for her deposition on April 14, 2010. Defendants sought sanctions. On June 4, 2010, Judge Haddad ordered Cristina to appear for her deposition and tender her answers to interrogatories within 60 days of trial, *i.e.* by July 6, 2010. He further ordered that if she failed to comply, she would be sanctioned in one or more ways, including being barred from testifying, being barred from maintaining her particular claim, having her claim dismissed with prejudice, and/or such other relief sought by the parties.

¶ 276        *Greyhound's Settlement in Underlying Action*

¶ 277        While Cushing's interlocutory appeal was pending before this court, the underlying Illinois action was settled for $2,090,000 ($2 million from Greyhound and $90,000 from Motor Coach). On June 10, 2010, the court issued an order finding Greyhound's offer of $2 million to be made in good faith, fair and reasonable, and in the best interest of the minor, Cristina. The court also noted that it made its finding after "having heard oral presentations

by Court appointed attorney, Colin O'Malley, Court appointed Guardian *ad litem* David J. Gubbins, counsel for defendant Greyhound, Paul Bozych and Colorado attorney for TB Klein, James Avery, all parties in interest having been notified." The cause of action against Motor Coach remained pending.

¶ 278            *Judge Haddad Bars Cristina From Testifying at Trial*
*and Dismisses Her Emotional Distress Claims*

¶ 279     Cristina failed to appear for her deposition by the court ordered date of July 6, 2010. On July 7, 2010, Judge Haddad, pursuant to Illinois Supreme Court Rule 213 (eff. July 1, 2001) and Rule 219 (eff. July 1, 2002), entered an order granting Motor Coach's motion to bar Cristina from testifying as to any claims pending before the court and to dismiss with prejudice all claims for negligent infliction of emotional distress on behalf of Cristina.

¶ 280            *Action Filed by Novoselsky (No. 09 L 10417) Is Dismissed*

¶ 281     As noted earlier, during the September 3, 2009, hearing before Judge Maddux, disagreement was expressed between Novoselsky and Stevens as to whether Cristina's own personal injuries for emotional distress were present in the 2007 lawsuit. It is undisputed that the 2007 action contained a count for negligent infliction of emotional distress, filed on behalf of Cristina, as noted by Stevens. Novoselsky's position, however, was that "the only possible plaintiff for an action belonging to the child" was the child's estate, who "nobody bothered to name" in the 2007 action. Noting that the child's estate was his client, Novoselsky had argued "my client isn't currently represented in that case, other than as a beneficiary in a supervised estate." We note that Cushing refers to case No. 09 L 10417 as the "Duplicate Case" and further notes that "[t]he complaint was not served or answered, there was no discovery, and there was no substantive motion practice or other activity." On July 14, 2010, on the oral motion of guardian *ad litem* David Gubbins, the case filed by Novoselsky, No. 09 L 10417, was dismissed without prejudice.

¶ 282            *Motor Coach's Settlement in Underlying Action*

¶ 283     On September 1, 2010, the court issued an order finding Motor Coach's offer of $90,000 to be made in good faith, fair and reasonable, and in the best interest of the minor, Cristina. The court noted that it made its finding after "having heard oral presentations by Court appointed Guardian *ad litem*, David J. Gubbins, counsel for Defendants Motor Coach Industries International, Inc. and Motor Coach Industries, Inc., and Court appointed attorney, David Novoselsky."

¶ 284            *Illinois Action Dismissed With Prejudice*

¶ 285     On September 24, 2010, the trial court entered an order dismissing the case "with prejudice." On October 1, 2010, the trial court entered an order of distribution of fees and expenses and again stated that the court was "dismissing the case with prejudice." The settlement proceeds were allocated as follows: $1,107,700 (53%) to the beneficiaries of the

estate; $522,500 (25%) for attorney fees; and $459,800 for costs, expenses and guardian *ad litem* fees. As to the wrongful death settlement proceeds, Cristina was awarded 95% and Klein was awarded 5%. Cristina's net recovery was $1,001,965 (wrongful death) plus $53,000 (emotional distress). Klein's net recovery was $52,735 (wrongful death).

¶ 286                                *Notices of Appeal Filed*

¶ 287     On October 25, 2010, notices of appeal were filed in the trial court by GAL Ammendola, Stevens, Cushing, and Klein. Klein's appeal, along with two others he filed, were subsequently dismissed.

¶ 288                                *Cristina Turns Eighteen*

¶ 289     Cristina turned 18 on April 12, 2012. We subsequently allowed her motion to substitute for all guardians.

¶ 290                            *Colorado Action Is Dismissed*

¶ 291     We take judicial notice that, based on the settlement agreement in this Illinois action, the Colorado action was dismissed by the federal court on June 30, 2011. Klein has appealed that decision.

¶ 292                            PARTIES IN THIS APPEAL

¶ 293     In accordance with our opinion in *Cushing I*, neither beneficiary has individual standing to appeal a wrongful death action. Cushing is the only proper party who can represent Claudia's estate and the interests of the beneficiaries in the wrongful death action. However, this appeal involves the settlement of a lawsuit involving both the wrongful death action and Cristina's individual claims for emotional distress, those claims having been pled as separate counts in the complaint below. Although several parties and attorneys have purported to represent Cristina's interests during the course of this litigation, none (with the exception of Tiberiu Klein) filed an appeal objecting to the settlement. As noted, Klein filed an appeal, purportedly on behalf of the minor, Cristina, as her "plenary guardian." In any event, Tiberiu Klein has no standing and we allowed his motion to withdraw from this appeal.

¶ 294     During the pendency of this appeal, after all briefs were submitted and this case was ready for disposition, Cristina, *pro se*, sought leave to intervene and substitute for all guardians based on her having reached the age of majority. We allowed Cristina's motion to substitute for all guardians. However, Cristina further asserted in an affidavit that she objects to the settlement. Yet the court-appointed guardian *ad litem* has never filed an appeal objecting to the settlement on her behalf. In fact, throughout the pendency of this appeal and the various motions that were filed, the court-appointed guardian *ad litem* has sought to uphold the settlement and moved to adopt the brief of defendant Greyhound. Moreover, the only issues either guardian *ad litem* raises in its own brief concern fees. Nonetheless, we allowed Cristina's motion to adopt Cushing's brief to protect any interest she has in objecting to the settlement. We recognize that the doctrine of judicial estoppel provides that when a

party assumes a certain position in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent legal proceeding. However, the doctrine imposes several requirements which include: (1) that the actions and statements were made during separate proceedings and not in the same action; and (2) that the party benefitted from the previous position. See *Farmer v. Country Mutual Insurance Co.*, 365 Ill. App. 3d 1046, 1052 (2006). Neither requirement was met here and we therefore conclude that Cristina is not judicially estopped from taking a position opposing the settlement.

¶ 295　　The instant appeal was previously part of a consolidated appeal, which included: (1) No. 1-10-3176, filed by Cristina's former guardian *ad litem*, Marina E. Ammendola, who was removed by Judge Locallo; and (2) No. 1-10-3196, filed by the law firm of Clancy & Stevens and Stevens, the attorneys hired by Cushing who were also removed by Judge Locallo. These two appeals were limited to issues related to attorney fees and costs. On February 28, 2013, this court heard oral argument limited to the issues raised in this individual appeal filed by Cushing. We did not address any issues related to fees. Subsequently, on March 15, 2013, this court entered an order deconsolidating the three appeals, but allowing all briefs and records filed in the prior consolidated appeal to stand.

¶ 296　　　　　　　　　　　　　　　　JURISDICTION

¶ 297　　Although by this opinion the fee issues raised by Novoselsky[6] are now moot, one of the issues raised in his brief concerned jurisdiction. Novoselsky argues that this court lacks jurisdiction because the orders being appealed were not final. Since we have an independent duty to ascertain our jurisdiction before proceeding in a cause of action, we shall address the argument. See *Cushing I*, 2012 IL App (1st) 100768, ¶ 83.

¶ 298　　On October 25, 2010, notices of appeal were filed in the trial court by all appellants in the previously consolidated appeal, including Cushing. Pursuant to Supreme Court Rule 303(a)(1), these appeals were timely, having been filed within 30 days of *either* final order. Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008).

¶ 299　　Novoselsky nonetheless contends that neither the September 24, 2010 order, nor the October 1, 2010, order was final or appealable. He notes that the October 1, 2010, order, entitled "Order of Distribution of Fees and Costs," incorporated the September 24, 2010 order dismissing the cause of action. He argues, however, that the order directing Greyhound to make a distribution to Cristina was "effective only after the entry in the appropriate Probate Division of an Order approving the bond or other security required to administer the

---

[6]Novoselsky filed his appellee brief in the prior consolidated appeal. Although the record indicates that Novoselsky represented various individuals and entities in this matter including decedent's spouse (Tiberiu Klein), decedent's parents (Maria and Vasile Zvunca), decedent's minor daughter (Cristina Zvunca), the guardian of the estate of the minor daughter (MB Financial Bank, N.A.), and the "special administrator" in the wrongful death action (MB Financial Bank, N.A.), and that Novoselsky was also appointed by the trial court to represent "the minor's interests," Novoselsky filed his brief on his own behalf only, and not on behalf of any party whom he formerly represented or claimed to represent.

-51-

settlement," yet a bond had not been purchased. As this court has explained:

> "A timely notice of appeal 'vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed, or modified.' [Citation.] Upon the filing of the notice of appeal, 'the cause of action is beyond the jurisdiction of the circuit court.' [Citation.] However, the circuit court retains jurisdiction to decide matters that are independent of or collateral or incidental to the judgment. [Citations.] 'Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from.' [Citation.]" *Moenning v. Union Pacific R.R. Co.*, 2012 IL App (1st) 101866, ¶ 22.

The requirement that a bond be purchased is a supplemental matter that did not divest this court of jurisdiction. The Illinois Supreme Court has explained that, according to its rules, "appeals may ordinarily only be taken from final orders which dispose of every 'claim'–*i.e.*, 'any right, liability or matter raised in an action.' [Citation.]" *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 339 (2001). The orders here were final because the rights of the parties had been established and the case had been dismissed "with prejudice." The purchase of a bond or other security was a matter that was collateral to the judgment and did not affect the appealability of the final orders. We have jurisdiction over this consolidated appeal pursuant to Illinois Supreme Court Rule 303 (eff. June 4, 2008), which provides for appeal from a final judgment of the circuit court.

¶ 300                                    ANALYSIS

¶ 301    Cushing raises several issues in his brief and contends that the trial court erred: (1) by granting the motion for substitution of Judge Zwick for cause where there was no evidence of prejudicial trial conduct or personal bias; (2) when it *sua sponte* removed and replaced counsel who had been retained by him, the duly appointed supervised administrator, without notice, hearing, or opportunity to be heard; (3) when it excluded the duly appointed supervised administrator from participating in the wrongful death case, including its settlement; (4) when it directed the guardian *ad litem*, whom the court had appointed after removing the former court-appointed guardian *ad litem*, to conduct settlement negotiations in the wrongful death action, including on behalf of the estate of Claudia Zvunca, deceased; (5) when it sanctioned the minor plaintiff by dismissing her claims with prejudice; and (6) by approving settlement of the wrongful death action where the administrator was excluded from participation and the court-appointed guardian *ad litem* and attorneys failed to show that the settlement was in the best interest of the estate and the minor. We begin with a threshold issue.

¶ 302           Whether the Trial Court Erred in Removing Cushing's Counsel

¶ 303    Cushing argues that the September 8, 2009 order that removed and replaced the counsel he had retained based upon the existence of a "conflict" is void. He contends that the court had no jurisdiction to enter the order because there was no motion to disqualify the attorneys presented to the court, and that the court "summarily stripped the Estate and Cristina of all their qualified attorneys seven days before trial when they were ready to proceed, even

-52-

though no party sought reconsideration of Judge Zwick's rulings." Although Greyhound had previously sought to disqualify Stevens, there is no indication in the record that Greyhound had renewed its motion before Judge Locallo, nor did Judge Locallo refer to Greyhound's motion in his ruling. Citing *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994), and *Suriano v. Lafeber*, 386 Ill. App. 3d 490, 493 (2008), Cushing now contends that a court cannot adjudicate an issue where, as here, there was no proper pleading presented to the court. We do not read those cases as standing for the proposition that a court cannot disqualify counsel until a party files a proper pleading. "Courts have interests in protecting the attorney-client relationship, maintaining public confidence in the legal profession and ensuring the integrity of judicial proceedings and have the authority to disqualify an attorney from representing a particular client to protect those interests." (Internal quotation marks omitted.) *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 12-13 (2009).

¶ 304    Cushing also asserts, however, that no conflict existed in the present case that justified removing his chosen counsel. He notes that Judge Zwick had determined "on two prior fully briefed motions and in two thorough written opinions" that any "conflict" on the part of Stevens had been fabricated. He argues that Judge Locallo "failed to analyze the *supposed* conflicts." (Emphasis added.)

¶ 305    Generally, "[a] *party* seeking to disqualify counsel bears the burden of proving the existence of a conflict of interest." (Emphasis added.) *Kensington's Wine Auctioneers*, 392 Ill. App. 3d at 13. In the instant case, however, the order was entered on the court's own motion, without notice, hearing, or the opportunity to be heard. Thus, neither Greyhound–nor any *party*–met the burden of "proving" the existence of a conflict of interest sufficient to disqualify counsel. Nonetheless, citing *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563 (1995), defendants contend that Judge Locallo did not err in removing Cristina's attorneys and the guardian *ad litem* because a court has "a duty and broad discretion to protect" the rights of minors involved in litigation. As the *Ott* court explained: " 'The court, whose duty it is to protect the interests of the infant, should see to it that they are not bargained away by those assuming, or appointed, to represent him.' " *Id.* at 577 (quoting *Kingsbury v. Buckner*, 134 U.S. 650, 680 (1890)).

¶ 306    Citing *Sullivan v. Eichmann*, 213 Ill. 2d 82, 90 (2004), defendants also note that "a *client* has an absolute right to discharge an attorney at any time with or without cause." (Emphasis added.) Without citation to any authority, however, defendants further assert that "[a] trial court necessarily has the *same* power to protect the interests of its ward." (Emphasis added.) Defendants also assert that "likewise" the court "must have the power to discharge a GAL." Therefore, defendants argue, "[g]iven the trial court's power, there is no issue to be considered on appeal as to the removals."

¶ 307    We agree that a court has a duty to protect the interests of its ward and that a court possesses the power to disqualify counsel where it is appropriate. However, to the extent defendants interpret these rules to mean that a court's power is unlimited with respect to the actions it takes in the interest of protecting a minor, we disagree. Moreover, we disagree with defendant's extrapolation of these rules to stand for the broad proposition that, whenever a minor is involved in a lawsuit, *the court* can discharge the ward's *attorney* at any time with

-53-

or *without* cause. The issue we address now is the removal–without notice, hearing or an opportunity to be heard–of the attorneys hired by Cushing. It is undisputed that Cushing, as the duly appointed supervised administrator of the estate of the deceased, had the right to retain counsel. See, *e.g.*, *In re Estate of Harnetiaux*, 91 Ill. App. 2d 222, 227 (1968) (right to institute a wrongful death action and to settle the same is with the personal representative of the deceased, not with an heir, and personal representative may enter into a contract with attorney).

¶ 308    We first note our standard of review: "A trial court's decision to disqualify counsel will not be overturned on appeal absent an abuse of discretion, which is defined as a ruling that no reasonable person would agree with." *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681, 685 (2007). Furthermore, we apply an abuse of discretion standard on review even where the trial court's ruling relies only upon affidavits and documentary evidence, but no oral testimony, because the trial court necessarily made factual determinations. *Gagliardo v. Caffrey*, 344 Ill. App. 3d 219, 225-26 (2003).

¶ 309    Citing *Muellman-Cohen v. Brak*, 361 Ill. App. 3d 52, 54 (2005), Cushing asserts that Judge Locallo's order must be vacated as void because it lacks any analysis or reasoning. In *Muellman-Cohen v. Brak*, defendants moved to disqualify plaintiff's counsel after learning that he was a postoccurrence witness to plaintiff's accident (he drove her to the emergency room). The trial court disqualified plaintiff's counsel *after a hearing was held*. Plaintiff appealed but there was no transcript of the hearing and the trial court's written order did not specify the grounds for the disqualification. This court stated: "*If* the trial court had relied on Rule 3.7(a), the trial court would have been in error because Rule 3.7(a) bears no applicability to these facts." (Emphasis added.) *Id.* Although the defendants there argued that this court should affirm the trial court's order pursuant to *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984), we determined instead that we did not know whether plaintiff *could* have provided a more complete record than she did. As we explained: "Given the seriousness of the trial court's decision to disqualify plaintiff's attorney, we will not presume the trial court acted in conformity with the law where the court has not set forth specific grounds on which we may defer to its judgment." *Muellman-Cohen*, 361 Ill. App. 3d at 54. We also noted: "This court has repeatedly urged our trial judges to draft dispositive orders that set out the rationales for their decisions so that we may defer to the trial court's discretion with confidence." *Id.* (adequate findings relieve the appellate courts of having to grope through the record to decide whether some combination of credible evidentiary items could sustain a line of factual and legal conclusions that would support the trial court's ultimate decision) (citing *A.P. v. M.E.E.*, 354 Ill. App. 3d 989 (2004)); *In re Marriage of Adler*, 271 Ill. App. 3d 469, 476 (1995) (specific findings by the trial court form the predicate to the deference reviewing courts accord the trial court's exercise of its discretion); *North Shore Sign Co. v. Signature Design Group, Inc.*, 237 Ill. App. 3d 782, 790-91 (1992) (the considerable deference given a trial court's decision is predicated on the necessary requirement that the trial court make explicit factual findings on which a court of review may make an informed decision).

¶ 310    As opposed to Judge Zwick's written ruling on Greyhound's prior motions to disqualify Cushing's counsel, this court has no reasoned analysis for Judge Locallo's *sua sponte*

"blanket" removal order. Although Cushing now requests that we find the order void, we note that the procedural posture of *Muellman-Cohen v. Brak* was different than that of the instant case. Moreover, the court there vacated the order but also remanded the case with directions that the trial court enter a written order specifying the grounds for its decision to disqualify the plaintiff's attorney. That option is no longer available in view of Judge Locallo's retirement.

¶ 311    Although a trial court's disqualification of counsel is viewed for an abuse of discretion, the parties have not cited, nor have we found, an Illinois case–or any case for that matter–addressing the disqualification of counsel without notice or hearing. However, in another context, *i.e.*, a decision whether to impose sanctions, this court has stated that, although the decision is within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of discretion, "the predicate to such deference is that the circuit court make an informed and reasoned decision. A hearing ought to be held to give the parties involved an opportunity to present any evidence needed to substantiate or rebut the claim for sanctions and an opportunity to argue their positions." *In re Estate of Smith*, 201 Ill. App. 3d 1005, 1009 (1990); accord *In re Marriage of Johnson*, 2011 IL App (1st) 102826 (although trial court could *sua sponte* sanction an individual without a motion presented by a party, trial court could not act without a hearing and should have allowed the attorneys the opportunity to defend themselves).

¶ 312    Arguably, the removal of a client's chosen counsel is more drastic than the imposition of sanctions upon an attorney. "[A]ttorney disqualification is generally considered a drastic measure, because it bars a party from retaining the counsel of its choice and thus destroys the attorney-client relationship." *Pedersen & Houpt, P.C.*, 376 Ill. App. 3d at 685. "Courts are therefore cautious about granting motions to disqualify, lest they be used tactically as a means of harassment." *Id.* "This concern must be balanced against the need to enforce the canons of legal ethics, which are designed to protect the attorney-client relationship and maintain public confidence in the integrity of the legal profession and the administration of justice." *Id.*

¶ 313    Despite the absence of a hearing or any written order containing a reasoned analysis, defendants claim that "[t]he underlying reason for the removal of the attorneys and GAL rests with Ammendola and Stevens." As they did in their motion to disqualify Stevens that was denied by Judge Zwick, they again refer to the fact that Cristina resided with Stevens and assert that "Ammendola and Stevens had professional duties to be candid with the court and opposing counsel." Defendants also claim that "[b]y withholding information, Ammendola and Stevens caused their problems with Cristina, the interview with Judge McGury, the Malkin report, the federal lawsuit, the motion to depose/disqualify Stevens and motion to reconsider, and the removal of Judge Zwick." Since Judge Locallo issued his "disqualification" order *sua sponte*, defendants apparently rely on statements made by Judge Locallo during other hearings. On September 14 and 16, 2009, Judge Locallo discussed the reasons for his prior order. However, he failed to allow Cushing's counsel to address the court. Nonetheless, to the extent that we can glean the reasons for the order from the transcripts of the hearings that occurred subsequent to the date it was entered, we shall consider whether Judge Locallo abused his discretion in removing Cushing's counsel.

¶ 314     According to comments made by Judge Locallo after he issued his order, the "conflicts" that required the disqualification of Stevens, can be summarized as follows: (1) Stevens was a witness to Cristina's emotional distress claim and therefore disqualified under the witness-advocate rule; (2) Cristina had sued Stevens, regardless of the suit's merit ("the bottom line is you cannot serve two masters when the one master is suing you"); and (3) Stevens had answered ready for trial before Judge Maddux on September 3, 2009, even though Cristina's deposition had not been taken, there was no evidence that the child was under care for the emotional distress, and Cristina had told Judge McGury she did not have any emotional problems. We shall address each basis.

¶ 315          *The Witness Advocate Rule Did Not Require That Stevens Be Disqualified*

¶ 316     Defendants argue at length regarding GAL Ammendola's and Stevens's "professional duties to be candid with the court and opposing counsel" regarding the fact that Cristina had been living with Stevens. As noted, Greyhound had previously raised Rule 3.7 of the Illinois Rules of Professional Conduct (Ill. R. Prof. Conduct R. 3.7 (eff. Aug. 1, 1990)), or the "witness-advocate rule," before Judge Zwick as a basis for removing Stevens. At the time of Judge Zwick's ruling in 2008, and Judge Locallo's ruling in 2009,[7] Rule 3.7 stated:

> "(a) A lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client, except that the lawyer may undertake the employment and may testify:
>
> (1) if the testimony will relate to an uncontested matter;
>
> (2) if the testimony will relate to a matter of formality and the lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony;
>
> (3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client; or
>
> (4) as to any other matter, if refusal to accept or continue the employment would work a substantial hardship on the client." Ill. R. Prof. Conduct R. 3.7 (eff. Aug. 1, 1990).

¶ 317     "The advocate-witness rule precludes an attorney from acting as an advocate and as a fact witness in the same case." *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App. 3d 542, 573 (2009). "However, the advocate-witness rule is not absolute." *Id*. "The testimony of an attorney in a case that he is trying should be allowed only when the court, in its discretion, deems it necessary." *Andrea Dumon, Inc. v. Pittway Corp.*, 110 Ill. App. 3d 481, 490 (1982) (citing *Cannella v. Cannella*, 132 Ill. App. 2d 889, 893 (1971)).

¶ 318     In *Dumon*, this court interpreted the former rule 5-101(b)(4) of the Illinois Code of Professional Responsibility (Ill. S. Ct. R. 5-101(b)(4) (eff. July 1, 1980) (repealed Aug. 1,

---

[7]The former Rules of Professional Conduct were repealed in 2010 and replaced by a new set of rules.

1990)), which provided that an attorney may testify without withdrawing from the case when his withdrawal would " 'work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.' " *Dumon*, 110 Ill. App. 3d at 490 (quoting Ill. S. Ct. R. 5-101(b)(4)). *Dumon* involved a "trade secret case, replete with technical testimony and exhibits." *Id.* The court, noting that the case had proceeded in the trial court for seven years between the time the complaint was filed and the time the trial counsel offered his testimony, held that the trial court did not err in permitting the attorney to testify as a witness, without requiring him to withdraw from the case.

¶ 319    In her written memorandum order, Judge Zwick analyzed and applied Rule 3.7 to the present case. In denying defendants' motion to disqualify Stevens, Judge Zwick noted that plaintiffs acknowledged Stevens would not be called to testify "on behalf" of Cristina. Judge Zwick further concluded, among other things, that any facts elicited from Stevens would be cumulative to testimony proffered by numerous other witnesses and it was not evident how Stevens's testimony would be useful to the defense or how her lack of testimony would prejudice the defense.

¶ 320    As Cushing notes, Rule 3.7 permits continued representation even if the attorney would testify, "if refusal to accept or continue the employment would work a substantial hardship on the client." Ill. R. Prof. Conduct R. 3.7(a)(4) (eff. Aug. 1, 1990). In her order denying defendants' motion to reconsider, Judge Zwick pointed out that hardship: depriving the estate and Cristina of the counsel who, she noted, had an "encyclopedic knowledge" of the discovery that had taken place throughout the "five years of aggressive litigation that [had] included transnational and international discovery and depositions]." She noted further that "[d]ocuments, which are the subject of production requests, motions and privilege orders, number[ed] in the thousands." She ruled that disqualification would "deny these plaintiffs of the knowledge and experience of their attorneys." That, Judge Zwick concluded, would be an "injustice."

¶ 321    In disqualifying Stevens, Judge Locallo did not refer to Judge Zwick's rulings and there is no indication in the record that he considered her analysis of this issue (although we note that, in his August 17, 2009 email to Klein, Novoselsky stated that Judge Locallo had already "laughed" at Judge Zwick's written decision). We conclude that the witness-advocate rule was not grounds for disqualifying Stevens. We also note that following Stevens's removal, the record shows no attempt by any party to depose her or call her as a witness.

¶ 322    *The Lawsuits Against Stevens That Were Filed by Novoselsky*
*Did Not Require That Stevens Be Disqualified*

¶ 323    Judge Locallo also commented on the fact that "Cristina" had sued Stevens in federal court, referring to a case filed by Novoselsky. Cushing now notes that nothing in the record shows that Judge Locallo "considered the specific allegations of that case, whether it actually created a conflict or whether the conflict was manufactured for an improper purpose." Cushing asserts that the cases were "fabricated" to remove counsel. This court cannot make that determination.

¶ 324    Judge Locallo concluded that the mere filing of the lawsuit was a conflict sufficient for

-57-

disqualification, regardless of the merits of the case: "the bottom line is you cannot serve two masters when the one master is suing you." Under the "convoluted attorney-created procedural labyrinth" involved in this case, we disagree. While we recognize that a lawsuit filed against an attorney by his or her own client may "normally" be grounds for disqualifying that attorney, there was nothing "normal" about the filing of the malpractice lawsuits, purportedly on behalf of the "minor."

¶ 325    As noted above, Novoselsky initially filed the federal lawsuit on behalf of *his* clients who were, at the time "Vasile Zvunca and Maria Zvunca, individually and as next friend of a minor, Cristina Zvunca" As to the state lawsuit, it was originally filed on behalf of his clients who were, at the time, "the estate of Cristina Zvunca, a minor, through its plenary guardian, Tiberiu Klein, and Cristina Zvunca, an individual entitled to bring suit to protect her own individual rights." Klein would later claim that he did not authorize this suit (and Cristina, a minor, could not have retained Novoselsky on her own). Moreover, although it is unclear when Klein fired Novoselsky, Judge Locallo did not address Novoselsky's simultaneous representation (or former representation) of Klein and Cristina, who a prior panel of this court, as justification for allowing two wrongful death actions to proceed in separate fora (one in Illinois and the other in a Colorado federal court), had already noted were "legally strangers" and "two parties with potentially divergent interests." *Marshall*, No. 1-05-0701, slip op. at 2-3 (2005) (unpublished order under Supreme Court Rule 23). Although Judge Locallo was made aware of Klein's interests in "his" Colorado suit, he did not explore or even consider Klein's possible motive in becoming plenary guardian as part of his (prior ongoing) attempt to remove GAL Ammendola and Stevens. Judge Locallo also did not consider the fact that Cristina had told Judge McGury that she received her information from Klein. It was an abuse of discretion for the court to *sua sponte* disqualify Stevens without allowing her to address the court before ruling.

¶ 326    It was a further abuse of discretion to not allow Stevens to address the court after her removal, *i.e.*, during the hearing where Judge Locallo stated his "reasons" for her disqualification. As we noted earlier, when Stevens told the court there was "more to this," Novoselsky stated that Stevens had been removed from the case. Judge Locallo then told Stevens she was not going to address the court. Stevens told the court she needed to "know the basis" upon which the court was making its rulings and what materials the court had reviewed and had not reviewed and how it had come to its conclusions. Novoselsky interjected, "Judge, she has no right to cross-examine the Court on a ruling." Stevens then informed the court that "Mr. Novoselsky is the reason that Cristina was never evaluated" and that Judge Locallo had "not had an opportunity to see that." The court then told Stevens to "[t]ake a seat" and told her "I'm not going to respond to you." Novoselsky then discussed the background of the case, including the actions taken by GAL Ammendola and Stevens. Stevens stated that she should be given an opportunity to speak if the court was going to allow Novoselsky to say things that were not true. Again noting it had already found Stevens had a conflict, the court again told her to "sit down." Novoselsky then discussed the status of the case. In sum, the mere fact that the lawsuits had been filed did not require that Stevens be disqualified.

¶ 327    *Stevens Was Not Required to Be Disqualified for Answering Ready for Trial*

¶ 328    An additional reason that Judge Locallo listed for his decision to remove Stevens was the fact that Stevens had answered ready for trial before Judge Maddux on September 3, 2009, even though Cristina's deposition had not been taken, there was no evidence that the child was under care for the emotional distress, and Cristina had told Judge McGury she did not have any emotional problems. Judge Locallo did not allow Stevens the opportunity to explain her decision and it is unclear as to whether he was aware of the complicated history regarding the issue of Cristina's testimony, or the conflict between Klein (both as *pro se* and as represented by Novoselsky) and GAL Ammendola. The following chronology of events sheds additional light on the issue.

¶ 329    As noted, Greyhound began seeking Cristina's deposition in 2005. On July 10, 2007, in addition to the motions noted above, Greyhound also filed a motion to compel Cristina's deposition to take place in Cook County. In a letter dated September 6, 2007, Dr. Leventhal opined that it was not appropriate for Cristina to give a deposition. Judge Zwick, on both September 11, 2007, and January 31, 2008, when Cristina was again living in the United States, requested a current medical evaluation before ruling on whether it was in Cristina's best interests to give a deposition. Thereafter, Klein refused to cooperate with GAL Ammendola in obtaining a current medical evaluation. On February 20, 2008, GAL Ammendola faxed a letter to Klein, who was Cristina's temporary guardian at the time, urging his cooperation. On February 21, 2008, the day after GAL Ammendola's written request to Klein to cooperate, Novoselsky faxed a letter to GAL Ammendola informing her that he had been "retained by Klein to represent his interests in this matter." On March 11, 2008, the trial court ordered that Cristina be produced for a medical examination by the pediatric psychiatrist. On May 8, 2008, at his deposition, Dr. Leventhal testified that there were two reasons he did not think it was appropriate for Cristina to give a deposition: (1) she had not been adequately engaged in a treatment program that would be able to support her through the process; and (2) based on the records he had read, Cristina was struggling and to have her reexperience these events through a deposition could have exacerbated her problems and might cause a reinjury. He further stated that his opinion was the same regarding Cristina testifying at trial.

¶ 330    Greyhound continued to pursue Cristina's testimony. On June 3, 2008, Judge Zwick noted that, with the exception of Cristina's testimony, the case was ready for trial.

¶ 331    On June 5, 2008, Judge Zwick reiterated that she wanted an updated medical examination of Cristina before ruling on Greyhound's motion to compel Cristina's deposition or Greyhound's Rule 215 motion. Judge Zwick ordered GAL Ammendola "to attempt evaluation of Cristina by [the pediatric psychiatrist] on or before June 20, 2008." Thereafter, Klein continued his refusal to cooperate with GAL Ammendola in obtaining a current medical evaluation. Novoselsky became involved. As described earlier, Novoselsky sent GAL Ammendola a letter on June 10, 2008 in which he stated he represented both Cristina and Klein. Noting that Klein was Cristina's "lawful guardian, albeit temporary," Novoselsky asserted that GAL Ammendola, the court-appointed guardian *ad litem*, could not speak to Cristina. He also stated that he planned to present to Judge McGury a motion for sanctions against GAL Ammendola for attempting to speak to Cristina. Novoselsky stated that "any

effort by [Ammendola] or anyone else to physically take control of this child and take her to anywhere–let alone to appear before a psychiatrist–would be kidnapping." He also stated that "[n]either [Ammendola] or Judge Zwick can order her to be taken anywhere other than by requesting that her personal guardian do so."

¶ 332    On June 11, 2008, GAL Ammendola filed an emergency guardian *ad litem* report to the court advising it that she was unable to communicate with the minor. Also, on July 11, 2008, Judge Zwick denied Greyhound's Rule 215 motion for an independent medical exam of Cristina but granted Greyhound leave to file a motion to bar Cristina from testifying at trial and to dismiss Cristina's negligent infliction of emotional distress claims. On July 17, 2008, as part of Klein's effort to be appointed Cristina's plenary guardian, the probate division appointed GAL Malkin who concluded, based on interviews with Klein, Cristina, and her grandparents that there was no conflict between Cristina and Klein and no conflict with respect to the proceeds of any personal injury action that may be forthcoming. On July 18, 2008, a hearing was held before Judge McGury in the probate division where 14-year-old Cristina told Judge McGury that she did not want to see the pediatric psychiatrist because she did not "have any mental problems" and that she wanted Klein to be her guardian. Cristina also asked Judge McGury "[w]hy can't Ms. Ammendola leave us alone?" The arguments between GAL Ammendola and Novoselsky during that hearing are detailed earlier in this opinion.

¶ 333    Clearly there was disagreement regarding the issue of whether Cristina could–or should–testify, and whether she should first be evaluated medically. However, we find it troubling that the record reflects confusion regarding the basis for the disagreement. There is no indication in the record that GAL Ammendola's concern was anything other than her concern that testifying might harm Cristina emotionally. Specifically, her concern was that Cristina's discussing the event would revest her with the event and cause her permanent harm. The record clearly shows, however, that this concern was based on opinions of prior medical professionals, shared by Stevens, raised before Judge Zwick, and confirmed by expert, Dr. Leventhal.

¶ 334    Judge Locallo did not address the complicated issue of Cristina's testimony, the concerns over whether it could harm her emotionally, or clearly explain the reasons for the problems with obtaining that deposition. Stevens was never given the opportunity to address the court and explain her decision. Thus, the fact that Stevens answered ready for trial before Judge Maddux on September 3, 2009 did not require that Stevens be disqualified.

¶ 335    *Cushing's Additional Counsel Was Not Required to Be Disqualified*

¶ 336    As Judge Locallo explained, he had disqualified the Leahy & Hoste firm, "not for any reason other than the fact that they were representing Marina Ammendola, who has been removed as guardian ad litem." However, he did not explain how the firm's representation of GAL Ammendola created a conflict. As to Lupel, who represented Stevens in the federal lawsuit, Judge Locallo stated "that conflict also exists." Therefore, for the reasons discussed, it was also an abuse of discretion to disqualify Cushing's additional counsel.

¶ 337    *Judge Locallo Abused His Discretion in Disqualifying Cushing's Counsel*

¶ 338    After our thorough review of the record in this case, the briefs of the parties, and the oral arguments, we conclude that Judge Locallo abused his discretion in disqualifying Cushing's counsel where he acted *sua sponte* without motion, notice or hearing to allow their input, and failed to analyze the purported conflicts. Therefore, we vacate the September 8, 2009 order that removed Stevens, Leahy, Hoste, Clancy, the Clancy firm, and the Leahy & Hoste firm.

¶ 339    More importantly, even assuming *arguendo* that the court could have granted a motion to disqualify the administrator's attorneys, Cushing should have been allowed to select new counsel. Although Cristina was a plaintiff as to the negligent infliction of emotional distress count, there is no dispute that Cushing, as the representative of Claudia's estate, was the plaintiff as to the remaining counts for wrongful death. Also, although Cristina was a beneficiary of Claudia's estate and her interests were to be protected by the court, there is no dispute that Klein was also a beneficiary of Claudia's estate. Regardless of Cushing's "reinstatement" by the judge in the law division, removal of Cushing's attorneys left the estate unrepresented in all subsequent actions. While it is true that Cushing subsequently retained attorney Scott Golinkin, the fact remains that Claudia's estate was not represented during the settlement negotiations, as we next address in further detail.

¶ 340            Whether the Trial Court Erred When It Excluded Cushing From
                Participating in the Wrongful Death Case, Including Its Settlement

¶ 341    Part of our jurisdictional analysis in *Cushing I* involved a conclusion that is substantively relevant to the instant appeal. We concluded that the trial court's order appointing MB Financial Bank, N.A. as the special administrator "effectively changed Cushing's status" and "excluded Cushing from his appointed role." *Cushing I*, 2012 IL App (1st) 100768, ¶ 85. Moreover, the record shows that MB Financial Bank, N.A., played no role in the settlement negotiations, leaving Claudia's estate unrepresented.

¶ 342    Cushing did not expressly state any opposition to the settlement below. We are mindful, too, that during the October 27, 2009 hearing before Judge Locallo, Cushing indicated he did not need to participate in the settlement discussions. Defendants now contend that "Cushing's failure to oppose the settlement constitutes waiver." Citing *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002), they further argue that, "[e]ven if Cushing believed that the court would not listen, he needed to make an offer of proof to preserve the issue." In *Dillon*, the Illinois Supreme Court explained:

"When a trial court excludes evidence, no appealable issue remains unless a formal offer of proof is made. The failure to do so results in a waiver of the issue on appeal. The purpose of an offer of proof is to inform the trial court, opposing counsel, and a reviewing court of the nature and substance of the evidence sought to be introduced. However, an offer of proof is not required where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced." *Id.* at 495.

Dillon is distinguishable. The instant case did not involve the admission of evidence. Moreover, as Cushing correctly notes, the cases cited by defendants address waiver by a party. Cushing notes that defendants cite no authority for the proposition that one who is no

longer a party can waive objections to orders. He also argues that defendants' "waiver" argument is "effectively moot because the settlements were a done deal before the good faith hearings." As Cushing notes, on June 2, 2010, Judge Haddad stated:

> "There was [a] pretrial discussion in this matter and there appears to be a meeting of the minds by and between the parties in this case. Greyhound and the plaintiff estate in a recommendation by the guardian ad Litem that this Court is in agreement with under *Will* and *Ott*. However, I'm going to hold this over 'til Monday for final decision to give all parties an opportunity to be heard. *In my mind this matter is settled between Greyhound and the plaintiffs in this matter. There is an oral agreement and this Court is going to approve that agreement*, but I want to give all parties an opportunity to appear and I'll do so on–that will happen on Monday." (Emphasis added.)

Cushing additionally notes that neither he nor his lawyers were present in court that day and that Cushing had been excluded from the pretrial conferences leading up to the settlement.

¶ 343 Defendants counter that, on June 7, 2010, both Cushing and Golinkin spoke privately with the court and Cushing's involvement is reflected in a bystander report. That bystander report, however, was prepared on May 30, 2012, and this court denied defendants leave to file it as a supplemental record.

¶ 344 Defendants also contend that the court was receptive to all input and Cushing was "given every opportunity to speak." Cushing argues, however, that it is irrelevant whether he spoke out about the settlements. He argues that once he was "wrongly removed from his office, later rulings concerning Claudia's Estate were void." He further notes that, once he was removed as a party, the trial judge did not afford him the rights of a party and instead treated him merely as a "person knowledgeable"–someone with useful information but without authority to approve or reject a settlement.

¶ 345 Defendants argue that, on June 9, 2010, after allowing Avery to speak on behalf of Klein, the court "offered the floor to Cushing." Although defendants include excerpts of the discussion, we believe the comments must be viewed in context:

> "[THE COURT]: I do want input from everyone, even taking this extraordinary step of letting an outside attorney [Avery] come in to Illinois and talk about this who may or may not have admitted to a conflict of interest in my eyes, but I am allowing you to speak because I do want to open this court to full consideration of all points of view with relation to our case here.
>
> So with that, what I'm going to ask, Counsel, do you have anything to say on behalf of Mr. Cushing?
>
> [GOLINKIN]: Your Honor, I would say this and let me ask the Court, if I may, if I understand the Court correctly, there is going to be sort of a presentation by counsel here of the rationale for the proposed settlement?
>
> [THE COURT]: It is extraordinary. Normally this is not done in open court on the record, but I am doing it in this case because I want this to be a transparent procedure.
>
> [GOLINKIN]: This is what I would say, your Honor, for the record, Scott Golinkin on behalf of John Cushing. As you know, *Mr. Cushing is, in fact, the [supervised]*

*administrator of the estate of Claudia Zvunca, the named Plaintiff in that sense*, and he has not been either given notice of things that have been going on in this court for months now and has not had an ability to participate in any meaningful way with settlement discussions or the rest of it. So I would like to have the opportunity once whatever statements are made about the rationale for the settlement to at least advise the Court of Mr. Cushing's viewpoint at that point in time since he doesn't know what any of this is.

[THE COURT]: In all due respect to Mr. Cushing, he is a well-respected attorney and I know him, he is an administrator appointed *in probate. Once we settle the case here*, I'm going to hand it over to probate, and they are going to do what they are going to do. But the joint order of March 2006 that was agreed upon by the probate and law division is that we handle our liability and settlement and distribution end of it and then probate administers the estate. But I never shut Mr. Cushing out. He met me the first day he came into court and I always like to know what people are thinking. *So as long as you understand it by allowing him, I'm not accepting your representation of his standing here so much as I'm accepting his representation as a person knowledgeable.* He certainly has as much reason to be here as Mr. Avery or anybody else so with that I'll allow Mr. Cushing to be heard. But I'm going to let–if he wishes to be heard, I'll let him hear everyone else and he can weigh in if he wishes to. He is waving to me that he likes you as an attorney but he is not agreeing to weigh in. I notice him saying no, Judge, I don't want to do it.

[CUSHING]: It is always a pleasure to be in your courtroom, Judge.

[THE COURT]: Thank you. Is that your way of saying you're not going to have anything to say, Mr. Cushing?

[CUSHING]: Who would listen? That's all right.

[THE COURT]: Let's resume our seats and let's proceed with this hearing." (Emphases added.)

¶ 346    The court then heard detailed presentations beginning with attorney Colin J. O'Malley of the law offices of Goldberg, Weisman & Cairo, Ltd., who appeared on behalf of "MB Financial and Cristina Zvunca, a minor." Greyhound's attorney and GAL Gubbins also addressed the court at length. GAL Gubbins stated that he, as guardian *ad litem*, had "exclusive power to direct, manage, control the suit on behalf of [the] minor" subject to supervision and limitation by the court. He requested the court to accept Greyhound's $2 million offer.

¶ 347    Golinkin then asked to address the court. He told the court that, with respect to a $2 million offer made by Greyhound in 2009 that was purportedly communicated to all the parties, it was never communicated to Cushing or his attorneys. Golinkin also wanted it put on the record that, although MB Financial Bank, N.A., had been appointed as the guardian, he had not heard anything, in writing or otherwise, regarding the guardian's position on the settlement. There was then discussion regarding MB Financial Bank, N.A.'s role as guardian and special administrator. GAL Gubbins opined that it had no active or real role and that the court needed input only from the GAL pursuant to the case of *Ott.*

¶ 348    The transcript clearly supports Cushing's argument that, once he was removed by Judge

Locallo as a party, regardless of his "reinstatement," the trial court did not afford him the rights of a party and instead treated him merely as a "person knowledgeable"–someone with useful information but without authority to approve or reject a settlement. As Judge Haddad stated during a hearing on July 30, 2010:

> "Mr. Cushing, you have no standing to hire or fire anyone in this case. Judge Locallo has made it clear that your matters in probate are the matters that are of your concern and not in law division. So the bringing of this motion without standing causes the Court some pause."

¶ 349    While it is true that the instant case involved counts for Cristina's personal emotional distress claims, this was also a wrongful death action. Cushing was the administrator and as we held in *Cushing I*: " 'it is this administrator who possesses the sole right of action or control over the suit.' *** [Citation.]" (Emphasis omitted.) *Cushing*, 2012 IL App (1st) 100768, ¶ 92. The trial court erred when it excluded Cushing from participating in the wrongful death case, including its settlement. It follows that the trial court erred when it directed the court-appointed replacement guardian *ad litem* to conduct settlement negotiations in the wrongful death action, which Cushing has raised as an additional argument.

¶ 350    Whether the Settlement Agreement Is Invalid Where Claudia's Estate
Was Not Represented During Settlement Discussions

¶ 351    Defendants argue that the trial court had sound reasons for settling the case and exercised sound discretion by approving the settlement as in the best interests of the minor. Defendants apparently take the position that the settlement was "fair" and should be upheld, regardless of the procedural irregularities that occurred in this case. Defendants, citing *Ott* and *Will*, assert that a settlement that a trial court believed was "in the best interest" of a minor will be upheld absent an abuse of discretion. Defendants, however, were asked during oral argument who represented Claudia's estate during the settlement discussions. Regardless of defendants' arguments, the correct answer is that no one represented Claudia's estate. We agree with Cushing that this case is distinguishable from the cases of *Ott* and *Will*, which approved the use of a guardian *ad litem* where the trial court needed a neutral assessment of a proposed settlement for a minor that was being "obstructed" by the minor's representative.

¶ 352    *Ott* was a minor's medical malpractice action where the parents, who were the co-guardians of the minor's estate, objected to the terms of, and refused to consent to, a settlement agreement. Nonetheless, the trial court in *Ott* stated: " 'This case is settled for two million dollars according to a revised structured settlement, which I find satisfactory, and a *guardian ad litem will be appointed in place of the father to accept the settlement*.' " (Emphasis added.) *Ott*, 273 Ill. App. 3d at 568. The parents maintained their position and refused to accept the defendants' $2 million present cash value settlement offer. The trial court subsequently accepted and approved the report of the guardian *ad litem*; found the recommendations were in the best interest of the child; increased the settlement amount to $2,091,782; and ordered the guardian *ad litem* to execute all necessary documents to settle the case. The court found the settlement was fair and reasonable and the case was dismissed.

-64-

The parents appealed and the appellate court affirmed. As we have noted: "*Ott* stands for the proposition that 'when the court believes settlement to be in the minor's best interest, the court may order a prior-appointed guardian or conservator to effectuate settlement [citation]; and *if that person refuses*, may appoint a *guardian ad litem* to settle the case on the minor's behalf.' " (Emphases in original.) *Cushing I*, 2012 IL App (1st) 100768, ¶ 110 (quoting *Ott*, 273 Ill. App. 3d at 571).

¶ 353 In *Will*, "[f]ollowing years of litigation which included the appointment of a guardian *ad litem*, a bankruptcy proceeding, a mediation, a demand for settlement and *an objection to this settlement by Linda*, [who was the decedent's mother and co-administrator of the estate,] the trial court approved settlement in the amount of $16 million." (Emphasis added.) *Will*, 378 Ill. App. 3d at 282. The facts in *Will* were not typical and were distinguishable from the facts in the instant case. Although the trial court in *Will*, "in the stead of Linda as coadministrator executed the settlement papers," and the guardian *ad litem*, on behalf of the minor heirs, executed the settlement papers, they were also signed by the coadministrator (decedent's father, George Jr.) and the attorney, on behalf of the estate. We note that the *Will* court, relying on *Ott*, concluded that, despite the fact that the case involved wrongful death and survival actions rather than a medical malpractice action as in *Ott*, the trial court had authority to approve the settlement "because minors were involved and affected by the outcome of the settlement proceedings." *Id.* at 293. Although this may or may not be true, we believe it applies to those instances where a proposed settlement for a minor is being "obstructed" by the minor's representative. Notably, in *Will*, the coadministrator and the estate's attorneys did not agree with Linda's objection to the settlement. Moreover, the court noted that, although an administrator's duties do not include satisfying the administrator's "own personal interests," that was "precisely what [had] occurred" and had prompted the trial court to intervene. *Id.* at 292. As the *Will* court explained:

"Linda's dissatisfaction with the settlement offered had nothing to do with the adequacy of the amount suggested by Northwestern as a demand and ordered by the trial court. Rather, Linda refused to accept the $16 million settlement because it did not include nonmonetary items which she, alone, insisted upon, particularly, that Northwestern erect memorials to her son and that it offer counseling to all those who were present when he died. Yet, these nonmonetary items could never be ordered by any court, as the purpose of wrongful death and survival actions is to provide beneficiaries with the pecuniary benefits they would have received from the deceased had his life continued, not with nonmonetary items. [Citations.] As the trial court noted, this was not Linda's case alone; were it, her desires to reject the settlement in favor of what she herself wanted would be her prerogative and her legal right, no matter what the risk. But the cause belonged to the Estate, not to Linda. Her conduct of continuing to insist on these nonmonetary items, which were otherwise unobtainable via any court proceeding, was in direct opposition to coadministrator George Jr.'s desire to accept the settlement and was preventing [the decedent's] beneficiaries from expeditiously receiving their entitled benefits. Accordingly, it was proper for the trial court, which had the ultimate authority to oversee [the decedent's] estate, to review Linda's actions as administrator. [Citations.]" *Id.* at 292-93.

¶ 354    Nothing in the *Ott* or *Will* cases allows a trial court to direct a GAL, even a properly appointed GAL for one beneficiary, to "conduct" settlement negotiations and effectively exclude the estate's neutral court-appointed administrator. Although the *Ott* and *Will* cases discuss the court's role in protecting a minor, nothing in either case suggests that a trial court can manage litigation to the extent that was done here, particularly when it was done based upon representations by "dueling" counsel, removal of Cushing's counsel without a hearing, and exclusion of Cushing from the wrongful death action proceedings. Cushing acknowledges that the guardian *ad litem* serves to ensure that the court receives an assessment uncolored by the self-interest of the representative but notes that none of that was present here. Instead, the second guardian *ad litem*, who had been appointed only to represent one beneficiary, Cristina, and not Claudia's estate here, displaced Cushing, who was the party with the sole statutory authority to pursue the wrongful death case. After he was displaced, Cushing notes that the guardian *ad litem* "personally ran the litigation, involved himself in another lawsuit to the detriment of the Wrongful Death Case, supported counsel with a clear conflict of interest, negotiated a settlement and then recommended his own work to the trial court." Cushing also notes that GAL Gubbins was "[a]ppointed to act in Cristina's best interests, [yet] he helped advance a legal malpractice case even though, by his own admission, it greatly damaged her interests" in the instant action. GAL Gubbins was not the independent and neutral GAL contemplated by *Ott* and *Will*. We agree with Cushing that *Ott* and *Will* "should not be read as an open invitation for trial courts to appoint GALs to replace parties and take over their cases, without any showing of obstructionism or other behavior exceeding the normal adversarial process."

¶ 355    We are mindful that "Illinois public policy generally favors the peaceful and voluntary resolution of disputes." *Haisma v. Edgar*, 218 Ill. App. 3d 78, 86 (1991). "A settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law." *Id.* at 87. However, a party is not bound by a settlement agreement if his "interests were not fully and adequately represented." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 341 (2005). We conclude that the settlement agreement is invalid because the interests of Claudia's estate were not represented. Additionally, although defendants concede that Klein was a beneficiary of the Illinois action and entitled to a share in the settlement, we disagree with their contention that the court had the authority to settle the wrongful death suit on Klein's behalf. While we do not dispute the trial court's authority to "approve" a settlement, or its authority regarding the "allocation" or "distribution" of settlement proceeds, the trial court did not have the authority to settle this wrongful death action on behalf of the personal representative of Claudia's estate. Cushing had that authority and nothing in *Will* or *Ott*, applied to the facts of this case, would support the settlement. There was no necessity to protect the minor from Cushing, so long as he had not been removed. As noted earlier, the record also does not support the trial court's decision that the minor needed protection from Cushing's chosen counsel, or from the former guardian *ad litem*. Moreover, the trial court has no authority to "approve" a settlement agreement between defendants and Claudia's estate, where the estate's representative was not part of the agreement. The settlement agreements with Greyhound and Motor Coach are invalid. We therefore vacate the court orders of September 24, 2010 and October 1, 2010 and

remand this matter to the trial court for further proceedings consistent with this order.

¶ 356    Whether the Trial Court Erred in Granting Substitution of Judge for Cause

¶ 357    As noted, Cushing has also argued that Judge Locallo erred in granting the motion for substitution of judge directed at Judge Zwick where there was no evidence of prejudicial trial conduct or personal bias. He has additionally argued that "rectifying the errors" in this case "calls for something beyond remanding the case to Judge Haddad." He argues that we should remand the case to Judge Zwick because she was wrongly removed and that, based on her knowledge of the case, "she is best positioned to move it quickly to either a fair and reasonable settlement or to trial."

¶ 358    Defendants first argue that Cushing forfeited the issue by failing to include a copy of the motion for substitution of judge in the record. Generally, an appellant has the burden to present a sufficiently complete record of the circuit court proceedings to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). During oral argument, Cushing stated that he was unaware that the motion was not in the record until defendants raised the issue in their brief. The record, however, contains the transcript of the hearing before Judge Locallo on the motion for substitution of judge for cause, as well as Judge Zwick's prior rulings that formed the basis for the motion for substitution. Thus, the record provided is sufficient to apprise this court of the relevant issue on appeal. See, *e.g.*, *Whitmer v. Munson*, 335 Ill. App. 3d 501, 512 (2002) (and cases cited therein). We shall address Cushing's argument.

¶ 359    We note that the parties cite cases involving the issue of substitution of judge as a matter of right, although the instant case involves substitution for cause. Our supreme court has recently discussed the importance of the distinction:

"[Section 2-1001 of the Code of Civil Procedure] contemplates the use of a 'motion' when seeking substitution as a matter of right and the use of a 'petition' for situations in which substitution for cause is sought. The inadvertent interchange of these words in substitution cases can lead to confusion since the requirements for substitution as of right differ from those for substitution for cause." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 28.

The instant case involves a petition for substitution of judge for cause pursuant to section 2-1001(a)(3) of the statute.

¶ 360    The parties disagree on our standard of review. In considering Greyhound's petition for substitution of judge for cause, Judge Locallo, "like any other fact finder, [was required to] weigh the evidence to determine whether the named judge showed prejudice." *In re Marriage of Schweihs*, 272 Ill. App. 3d 653, 659 (1995); accord *Levaccare v. Levacarre*, 376 Ill. App. 3d 503, 509 (2007). Thus, we "will not reverse a determination on allegations of prejudice unless the finding is contrary to the manifest weight of the evidence." *Schweihs*, 272 Ill. App. 3d at 659. A trial court's decision "is not against the manifest weight of the evidence merely because there is sufficient evidence to support a contrary judgment." *Watkins v. American Service Insurance Co.*, 260 Ill. App. 3d 1054, 1062 (1994). Thus, "a reviewing court will not overturn the judgment merely because it would have reached a

different conclusion had it been the trier of fact." *Id*. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 361 "A trial judge is presumed to be impartial, and the burden is on the party alleging partiality to overcome this presumption." *Rush University Medical Center v. Sessions*, 2011 IL App (1st) 101136, ¶ 16. As "the party making the charge of prejudice," Greyhound was required to "present evidence of prejudicial trial conduct and evidence of [Judge Zwick's] personal bias." *Eychaner*, 202 Ill. 2d at 280. Judge Locallo found that Greyhound had met its burden of demonstrating bias against Greyhound and stated:

"Now, there is a saying, 'Actions speak louder than words.' Well, in this case, the words are damning. These are allegations against a law firm, lawyers. There is no evidence in the record of any attempt as far as this Court is concerned of Greyhound's attorneys attempting to sell out the Estate.

\*\*\*

So, it's very troubling that you have attorneys who are doing the best they can, and let's face it, this is a cluster. This is a cluster because Greyhound has had to deal with numerous individuals, some they like, some they don't, but be it as it may, but to put the Greyhound company and their lawyers in a position where a judge is drawing a conspiracy, very troubling; and, therefore, under these circumstances, I think it is in the best interest of all parties here that the SOJ for cause be granted."

Judge Locallo apparently concluded that Greyhound had established its burden of presenting evidence sufficient to overcome the presumption of Judge Zwick's impartiality.

¶ 362 As the Illinois Supreme Court has explained:

"To meet [section 2-1001(a)(3)]'s threshold requirements, a petition for substitution must allege grounds that, if true, would justify granting substitution for cause. [Citation.] Where bias or prejudice is invoked as the basis for seeking substitution, it must normally stem from an extrajudicial source, *i.e.*, from a source other than from what the judge learned from her participation in the case before her. A judge's previous rulings almost never constitute a valid basis for a claim of judicial bias or partiality. [Citations.]" *In re Estate of Wilson*, 238 Ill. 2d 519, 554 (2010).

As the *Wilson* court further noted:

"[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphases and internal quotation marks omitted.) *Id*. (quoting *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002), quoting *Liteky v. United States*, 510 U.S. 540, 555

(1994)).

More recently, our supreme court reiterated that "substitution under section 2-1001(a)(3) may be granted only where the party can establish actual prejudice." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31.

¶ 363    In the trial court, Greyhound conceded: "[T]he thrust of our motion is the *** order issued by Judge Zwick in response to the motion to reconsider the disqualification of Miss Stevens." Although Judge Zwick referred to Klein's email to his Colorado attorney regarding settling the Colorado action, we agree with Cushing that there was no evidence that Judge Zwick had a personal bias against Greyhound that stemmed "from an extrajudicial source." Thus, the question before Judge Locallo was whether Judge Zwick's remarks revealed " 'such a high degree of favoritism or antagonism as to make fair judgment impossible.' " *Eychaner*, 202 Ill. 2d at 281, (quoting *Liteky*, 510 U.S. at 555).

¶ 364    During the hearing before Judge Locallo, Greyhound contended that Judge Zwick's order showed that she was biased and prejudiced against Greyhound and had "prejudged issues." Greyhound asserted that Judge Zwick was "becoming an advocate for a certain position in the case" and her "advocacy" was established where she relied on the July 2007 email that Klein had sent to Avery, his attorney in his Colorado action. Greyhound's position is that the email evinces only Avery's settlement strategy with his client, Klein, but that Judge Zwick had implied that *Greyhound* was involved in a "plan." Greyhound also claimed that–in the memorandum order–Judge Zwick essentially accused *Greyhound* and Novoselsky of conspiring to get rid of Stevens.

¶ 365    In her nine-page memorandum order, Judge Zwick concluded as follows:

"[T]he record indicates that in July 2007, attorneys for Greyhound attempted to settle Mr. Klein's Colorado lawsuit for '7 or 8-9 million dollars' by having Mr. Klien [*sic*] contact the minor child's adoptive parents and agree to dismiss Cristina's Illinois suit. If accomplished, Cristina would have had no recourse for her damages suffered as a result of her mothers' death, and such action was clearly, and unequivocally to the minor's detriment. When this plan did not reach fruition, Mr. Klien [*sic*] and Mr. and Mrs. Zvunca, represented by the Novoselsky Law firm, unsuccessfully attempted to intervene in Cristina's suit in Illinois. As stated, the intervention was denied, in part, due to the attempt by Mr. Klien [*sic*] and the Zvuncas to take actions harmful to the minor's interest. Mr. Klien [*sic*] has been appointed Cristina's Guardian in Probate Court, with the knowledge and approval of the Zvuncas. For the appointment and in the probate proceedings, he is represented by Mr. Novoselsky, who has also advised the Probate Court that he is acting as an attorney for Cristina, despite the evident conflict between the minor and the actions of her now-guardian.

    The federal suit which forms the basis of Greyhound's motion to disqualify, was instituted by [Cristina's grandparents], who are again represented by the Noveselsky [*sic*] Law Firm. It was Greyhound's original unsuccessful settlement proposal to Mr. Klien [*sic*] that preceded Mr. Klein's involvement in the Illinois suit; Greyhound's counsel have advised this court that transcripts of court proceedings, as well as pleadings filed in this action have been made available to the Noveselsky [*sic*] Law Firm by Greyhound.

It is also of record that Greyhound's attorneys have attended the proceedings in Probate Court. And it is Greyhound who, on two occasions, has now prosecuted an action to remove plaintiff's current counsel from representation of the estate, and of the minor. Any conflict, allegedly created by allegations of fraud and abuse by the minor plaintiff, appears deliberate and by design."

¶ 366    We do not believe that any of these remarks revealed " 'such a high degree of favoritism or antagonism as to make fair judgment impossible.' " *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky*, 510 U.S. at 555). As an example of such remarks, the United States Supreme Court in *Liteky* cited the remarks alleged to have been made by a district judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants. There, the judge purportedly stated: " 'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.' " *Liteky*, 510 U.S. at 555 (quoting *Berger*, 255 U.S. at 28).

¶ 367    Although Judge Locallo focused on Judge Zwick's reference to the attempt to settle the Colorado action, we disagree that it showed any evidence of prejudice against Greyhound. Clearly, none of Judge Zwick's remarks including the reference to a "plan" to settle the Colorado action rise to the level of bias required by *Wilson* and *Liteky*. More importantly, Judge Zwick's discussion of the plan focused on the actions of Novoselsky, Klein and Cristina's grandparents. As Cushing notes, Judge Zwick did not level any accusations against Greyhound.

¶ 368    We also disagree with defendants' claim that Judge Zwick's statements regarding the federal lawsuit demonstrated her bias. Reading Judge Zwick's order in its entirety shows that her reference to the federal lawsuit did not evince any bias toward Greyhound. Rather, as Judge Zwick explained, Greyhound's *initial* motion to depose Stevens was predicated solely on Rule 3.7 of the Illinois Rules of Professional Conduct based on Cristina residing with Stevens, but Greyhound's *renewed* motion was based upon certain probate matters *and* upon the filing of the federal lawsuit. Although defendants now argue that the federal lawsuit had not yet been filed at the time of Greyhound's original motion to disqualify, and Greyhound "did not even mention the federal lawsuit," they nonetheless concede that Greyhound advised Judge Zwick of the federal lawsuit when it filed its supplemental brief on August 22, 2008. Moreover, as Judge Zwick noted in her May 12, 2009 order, Greyhound had asserted that the allegations in the federal lawsuit and the proceedings in federal court constituted "a conflict of interest which preclude[d] the continued representation of either the estate or the minor plaintiff by this counsel." Thus, Judge Zwick's consideration of the federal lawsuit showed no bias toward Greyhound. More importantly, as she had when discussing the plan to settle Klein's Colorado action, when she discussed the federal lawsuit, Judge Zwick focused on the actions of Novoselsky, Klein and Cristina's grandparents.

¶ 369    In sum, there was no evidence of bias against defendants on the part of Judge Zwick. Judge Locallo's decision to remove Judge Zwick was against the manifest weight of the evidence. Considering *all* of the evidence, we conclude that the opposite conclusion is apparent. Judge Locallo's findings to the contrary appear to be unreasonable, arbitrary, and not based on the evidence. *Eychaner*, 202 Ill. 2d at 252. The August 27, 2009 order must be vacated.

¶ 370    Having determined that Judge Zwick was improperly removed, we must consider the appropriate remedy. Since her removal on August 27, 2009, much has transpired in this action. Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) permits a reviewing court, in its discretion, to make any order or grant any relief that a particular case may require. This authority includes the power to remand a case to a different judge. See, *e.g.*, *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 263 (2004); *Eychaner v. Gross*, 202 Ill. 2d 228, 279 (2002); *In re Marriage of Smoller*, 218 Ill. App. 3d 340, 346-47 (1991). Cushing, however, has cited no authority that allows this court to remand a case to a particular judge. More importantly, as defendants note, Cushing has not alleged any bias on the part of Judge Haddad. Therefore, although we remand this case, we express no opinion as to whether it should be reassigned to Judge Haddad, Judge Zwick, or another judge. The assignment should be determined by the circuit court. That said, Judge Maddux should not make the reassignment decision in view of his prior acknowledgment of his conflict, *i.e.*, that Novoselsky was his counsel.

¶ 371                    Whether Trial Court Improperly Sanctioned the Minor
                        Plaintiff by Dismissing Her Claims With Prejudice

¶ 372    Since we have determined that there was no valid settlement agreement and are remanding this matter, we next address Cushing's argument that Judge Haddad improperly sanctioned Cristina for failing to give a deposition by dismissing her claims with prejudice. Cushing notes that Judge Haddad, after talking with Cristina, found her competent to testify. In a June 23, 2010 memorandum order, Judge Haddad noted that, on April 7, 2010, he "met with Cristina *in camera* to assure her that the court would personally preside over her deposition to protect her rights." Judge Haddad further stated:

> "The court found her to be a 16 year old who fluently spoke English. She is highly intelligent, highly focused, and persistent. Although no one filed a motion regarding her fitness, this court's interview demonstrated that Cristina was more than able to receive correct impressions, recall impressions, understand questions and express answers and appreciate her duty to tell the truth. She clearly had the capacity to observe, recollect and communicate. [Citation.] Although distraught over the tragic death of her mother, Cristina was by no means 'disabled.' "

¶ 373    Defendants assert that the court had sufficient knowledge and experience to determine that Cristina was able to testify. In support of their argument, defendants cite *Harris Trust & Savings Bank v. Otis Elevator Co.*, 297 Ill. App. 3d 383, 388 (1998). As the *Harris* court explained:

> "The question of whether a witness is competent to testify is a matter to be determined by the court through preliminary inquiry or by observing the witness' demeanor during trial. [Citation.] A court may consider the opinions of psychiatric experts in determining the competency of a witness; but if, after conducting a preliminary inquiry or observing the demeanor of the witness while testifying, the court is of the opinion that the witness is competent, then the court is not bound by expert opinions to the contrary." *Harris Trust & Savings Bank v. Otis Elevator Co.*, 297 Ill. App. 3d 383, 389 (1998).

Cushing now argues, however, that Cristina's "competency" was not at issue. Instead, "[t]he question was whether the trial court could substitute its own judgment for that of professionals who concluded that testifying at deposition and reliving the trauma of her mother's death would revest Cristina with the original trauma and cause her further emotional damage." Cushing asserts that the answer is "no." Citing *In re Ashley K.*, 212 Ill. App. 3d 849, 890 (1991), Cushing notes that a circuit court "cannot second-guess medical experts."

¶ 374     Defendants challenge the relevancy of the medical opinions in the instant case. They note that the "lack of a recent examination" was the problem with the evaluations of four of the medical professionals. As Cushing notes, however, in 2008, Judge Zwick ordered that Cristina be evaluated by Dr. Leventhal to see if she should be deposed. Although GAL Ammendola attempted to arrange the evaluation, her efforts were thwarted by atttorney Novoselsky, Klein, and the Zvuncas. Therefore, at a minimum, the trial court should have granted the requests of probate-appointed GAL Douglass that Cristina be re-examined by a professional before ordering her deposition to determine if it might harm her.

¶ 375     Defendants also assert that Dr. Leventhal's expert opinion was not relevant because he did not conduct any examination of Cristina. They also contend that the letters from Cristina's treating Romanian clinical psychologist were properly ignored because he was legally incompetent to testify and, therefore, his opinion was "meaningless."

¶ 376     As Cushing notes, when Judge Haddad did address Cristina's health, rather than look to the medical professionals to determine whether a deposition would harm Cristina, he asked Cairo for his opinion. It is not entirely clear from the record whether Judge Haddad was aware of Dr. Leventhal's opinion that Cristina's testifying could cause revestment and lead to further emotional damage. We also cannot determine if Judge Haddad knew of those concerns on the part of GAL Ammendola and Judge Zwick. There is no indication in the record that GAL Gubbins was aware, or informed Judge Haddad, of the concern regarding revestment. In any event, a judge may not substitute his opinion for the judgment of medical professionals without any medical evidence to contradict those professionals. See *In re B.D.*, 321 Ill. App. 3d 161, 165 (2001).

¶ 377     Judge Haddad was confronted with the immense task of trying to evaluate all of the proceedings, compounded by the actions of some of the attorneys who obfuscated the issues in this case. The request for a current medical evaluation of Cristina prior to deciding whether she would be unduly harmed by testifying was an eminently reasonable one. Dismissing Cristina's emotional distress claims with prejudice was too harsh a sanction under the facts of this case with all of its procedural irregularities. Therefore, we vacate the order of July 7, 2010, granting Motor Coach's motion to bar Cristina from testifying as to any claims pending before the court and to dismiss with prejudice all claims for negligent infliction of emotional distress on behalf of Cristina. This is without prejudice to the parties revisiting the issue of whether Cristina can testify without undue trauma to her.

¶ 378     Cushing has also argued that the trial court's distribution of fees and costs was improper: (1) without evaluations of the fee submissions for correctness or benefit to the estate or minor; (2) where the evidence showed that the distribution was not related to the work

performed and the results achieved; and (3) where the fee petitions were not made available to the administrator or other parties. In view of our decision to vacate the final order in this case and remand the matter for further proceedings, any discussion of fees would be premature.

¶ 379                                CONCLUSION

¶ 380    In accordance with the foregoing: (1) we vacate the September 24, 2010 and October 1, 2010 orders of the circuit court of Cook County; (2) we vacate the July 7, 2010 order granting Motor Coach's motion to bar Cristina from testifying as to any claims pending before the court and to dismiss with prejudice all claims for negligent infliction of emotional distress on behalf of Cristina, and also vacate the September 1, 2010 order finding Motor Coach's offer of $90,000 to be made in good faith, fair and reasonable, and in the best interest of the minor, Cristina; (3) we vacate the June 10, 2010 order finding Greyhound's offer of $2,090,000 to be made in good faith, fair and reasonable, and in the best interest of the minor, Cristina; (4) we vacate the September 22, 2009 order that amended the caption to read "Estate of CRISTINA ZVUNCA, a minor, by her Guardian *Ad Litem*, DAVID J. GUBBINS and F. JOHN CUSHING, Administrator *de bonis* [*non*] of the Estate of CLAUDIA ZVUNCA, deceased"; (5) we vacate the September 8, 2009 order that removed attorneys Jeanine Stevens, Thomas Leahy, Peter Hoste, Thomas Clancy, the Clancy law firm, and the Leahy & Hoste law firm; (6) we vacate the August 27, 2009 order that granted the motion for substitution of judge from Judge Zwick; (7) we direct the clerk of the circuit court to amend the caption to reflect that Cristina Zvunca is a party[8] and the caption should read "F. JOHN CUSHING, Administrator *de bonis* [*non*] of the Estate of CLAUDIA ZVUNCA, deceased, and CRISTINA ZVUNCA"; (8) we remand this case to the circuit court of Cook County for further proceedings consistent with this opinion, including reassignment to be made by a judge other than Judge Maddux, based on his prior acknowledgment of a conflict; and (9) we direct the clerk of the appellate court to send a copy of this opinion to the Attorney Registration and Disciplinary Commission (ARDC) in order to allow the ARDC to further consider the actions of the attorneys, and, in light of Maria Zvunca's affidavit of April 17, 2010, to investigate the specific claim made by Cushing against Novoselsky that he "fabricated" a cause of action for an improper purpose.

¶ 381    Vacated and remanded with directions.

---

[8]No guardian *ad litem* is required at this stage of the lawsuit because Cristina is no longer a minor and all guardians have been discharged. Cristina remains a party with respect to her individual claims for emotional distress in case No. 07 L 3391.